### JOHN HARMON *et al.*

### *v.*

### THE AUDITOR OF PUBLIC ACCOUNTS *et al.*

*Filed at Ottawa September 26, 1887.*

1. FORMER ADJUDICATION—*conclusive as between two defendants in chancery.* A decree settling adverse interests of two defendants in a chancery suit, when they have had a hearing on the merits and an opportunity of asserting their respective claims, will conclude them as fully as if the suit had been brought by the one against the other, so far as it affects rights presented to the court and passed upon.

2. SAME—*suit by tax-payers involving validity of municipal bonds— upon whom decree binding.* So where a bill was filed by certain tax-payers of a town, on behalf of themselves and the other tax-payers, against a railway company, the town, and the supervisor and town clerk thereof, to enjoin such town and its officers from issuing bonds of the town to the railway company in pursuance of a vote at a special town meeting, and the same was dismissed by this court, on appeal, for want of equity, this court holding there were no sufficient grounds shown for the relief sought, it was *held,* that the obligation resting upon the town to issue the bonds was just as binding, by reason of the decision of this court, as though judgment had been rendered in a *mandamus* proceeding, or in a suit on the bonds.

3. SAME—*the prior adjudication as a bar to any further litigation concerning the validity of the same bonds.* And where, in such suit, the liability of the town to issue its bonds in aid of the railway company is adjudged against the town, under a bill denying such liability, other tax-payers and citizens of the town will be concluded by the decree, and they can not, by another bill to prevent the collection of a tax to pay such bonds when issued, dispute their validity upon any of the grounds which were or could have been litigated in the prior suit.

4. SAME—*conclusiveness—upon whom, and in respect to what matters.* The value of a plea of a former recovery does not depend upon the reasons given by the court for rendering the judgment or decree. The principle of *res judicata* extends not only to the questions of law and fact which were decided in the former suit, but also to the grounds of recovery or defence which, under the issues, might have been, but were not, presented.

5. SAME—*whether validity of election in respect to municipal bonds was involved in prior suit.* A bill to enjoin town authorities from issuing bonds in aid of a railroad, after referring to the provision of the charter for calling an election, charged that said special town meeting and election were in conflict with the constitution, and that the ballots deposited by the

voters of the town at such special meeting for said donation were illegal and void, in this, "that the said voters had no legal power to determine, by the casting or depositing of their said ballots, as aforesaid, at said special town meeting and election, whether said town should make such donations * * * as to bind, * * * by their votes deposited at said special town meeting and election, the said town to make said donation or to issue their said bonds," etc. The prayer was, that the town be enjoined from making any donation in bonds under said special town meeting, and that such town meeting and election be decreed null and void. The answer averred that "said special town meeting and election were held, conducted and return thereof made in all respects as required by law:" *Held,* that not only the validity of the election was at issue, but every question affecting the validity of such election, as, whether it should have been held by three judges and two clerks instead of by one moderator and one clerk; and the bill having been dismissed on the merits, the validity of the election could not afterward be questioned on the latter ground by a second bill to enjoin the levy and collection of taxes with which to pay the bonds of the town.

6. SAME—*judgment or decree against municipal corporation—upon whom binding.* A judgment or decree against a county or township, or its legal representatives, is binding on all its citizens, though not parties to the suit. If the same is for a sum of money, it imposes an obligation against the citizens which they are compelled to discharge; and if, for the purpose of its payment, the proper authorities levy and attempt to collect a tax, none of the citizens can, by instituting proceedings to prevent the levy or collection of the tax, dispute the validity of the judgment, or re-litigate any of the questions which were or could have been litigated in the original action.

7. PURCHASERS—*innocent holders of municipal bonds—purchasing on the faith of a judicial decision.* After the decision of this court holding the validity of an election in a town for the issue of its bonds in aid of a railroad, and their issue in pursuance of such ruling, the bonds in the hands of purchasers for value, without notice, who bought relying on the faith of the decision of this court, will be protected. The obligation of a contract can not be impaired by a decision of the courts, any more than by legislative action.

APPEAL from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of Ogle county; the Hon. WILLIAM BROWN, Judge, presiding.

Messrs. COOK & LAWRENCE, and Messrs. W. & W. D. BARGE, for the appellants:

If there was no legislative authority for their issue, the bonds are void, even in the hands of innocent holders. *Barnes* v.

*Lacon,* 84 Ill. 461; *Ottawa* v. *Perkins,* 94 U. S. 269; *Town of Ciloma* v. *Eames,* 92 id. 278; *Dickson County* v. *Field,* 111 id. 95; *School District* v. *Stone,* 106 id. 103; *Oakland* v. *Skinner,* 94 id. 255; *Town of Middleport* v. *Life Ins. Co.* 82, Ill. 563;

As to the question whether the town is estopped from making a defence by the decision in *Railroad Co.* v. *Pinckney,* 74 Ill. 277, see *Clark* v. *Wolf,* 29 Iowa, 197; *State* v. *Wilson,* 74 Mo. 232; *Chicago* v. *Robinson,* 4 Wall. 672; 1 Greenleaf on Evidence, secs. 533, 535; Freeman on Judgments, sec. 178; *Scotland County* v. *Hill,* 112 U. S. 188; *Geneva Bank* v. *Riverside,* 25 Fed. Rep. 229.

The town can not represent or estop the tax-payers. *Bouton* v. *Boooklyn,* 15 Barb. 7; How. Pr. 198; *Denton* v. *Jackson,* 2 Johns. Ch. 320.

The complainants in this case were not parties in the Pinckney suit, and they are not bound as privies.    Bigelow on Estoppel, (4th ed.) 337; *Cromwell* v. *Sac County,* 94 U. S. 351; *Mail* v. *Maxwell,* 107 Ill. 554; *Gardner* v. *Raisbeck,* 28 N. J. Eq. 71; *Smith* v. *Turner,* 1 Hugh, 373; *DuPage County* v. *Jenks,* 65 Ill. 275; *Valsain* v. *Cloutier,* 3 La. 170; *Quackenbush* v. *Ela,* 5 Barb. 473; *Lawrence* v. *Hunt,* 10 Wend. 80; *Knox* v. *Exeter,* 42 N. Y. 10; *King* v. *Parker,* 15 N. H. 1; *Russell* v. *Place,* 94 U. S. 606; *Keaton* v. *Hock,* 16 Iowa, 24; *Burt* v. *Steenburgh,* 4 Cow. 559; *Eastman* v. *Cooper,* 15 Pick. 276; *Cooper* v. *Corbin,* 105 Ill. 224; *Scates* v. *King,* 110 id. 458.

The matter relied on in this case was not determined in the *Pinckney case,* and hence that case is no bar.    *Packet Co.* v. *Sickles,* 5 Wall. 580; *Davis* v. *Brown,* 94 U. S. 423; *Miles* v. *Caldwell,* 2 Wall. 35; *Campbell* v. *Rankin,* 99 U. S. 261.

Mr. J. A. CRAIN, for the appellee The German Insurance Company of Freeport:

A former adjudication may be relied on as an estoppel if the parties in the two suits are substantially the same. *Hanna* v. *Read,* 102 Ill. 605.

A citizen and tax-payer of a municipality has a right to file a bill in equity to restrain the corporate authorities from issuing its bonds without sanction of law, and have a decree protecting the other tax-payers. *Prettyman* v. *Supervisors*, 19 Ill. 406; *Chestnutwood* v. *Hood*, 68 id. 136; *Colton* v. *Hanchett*, 13 id. 615; *Drake* v. *Phillips*, 40 id. 389; *Howard* v. *Drainage Co.* 51 id. 131; *Coal Co.* v. *Blanchard*, 54 id. 241; *Sherlock* v. *Winnetka*, 59 id. 391; *Marshall* v. *Silliman*, 61 id. 220; *Richards* v. *Donagho*, 66 id. 74; *Decker* v. *Hughes*, 68 id. 35; *Ryan* v. *Linch*, 68 id. 161; *Sherlock* v. *Winnetka*, 68 id. 532; *Mason* v. *Shawneetown*, 77 id. 534; *Railroad Co.* v. *Coyer*, 79 id. 374; *Rutland* v. *Dayton*, 60 id. 62; *Springfield* v. *Edwards*, 84 id. 631.

When the plaintiffs sue in behalf of a class of persons, and are defeated on the merits, no subsequent action by the same parties or by others of the same class can be maintained. *State ex rel.* v. *Railroad Co.* 13 S. C. 290; *Commissioners* v. *Hinchman*, 31 Kan. 736; *State* v. *Wilson*, 74 Mo. 232.

A judgment against a county binds all the citizens and tax-payers of the county. Freeman on Judgments, sec. 188.

The principle of *res judicata* embraces not only what was determined in the former case, but also extends to any other matter properly involved, and which might have been raised and determined in it. *Rogers* v. *Higgins*, 57 Ill. 244; *Fishli* v. *Fishli*, 1 Blackf. 360; *Stockton* v. *Ford*, 18 How. 418; *Kelly* v. *Donlin*, 70 Ill. 378; *Ruegger* v. *Railroad Co.* 103 id. 450; *Hamilton* v. *Quimby*, 46 id. 90; *Garrick* v. *Chamberlain*, 97 id. 620.

Mr. M. D. HATHAWAY, for the other appellees:

The decree in the *Pinckney case* is *res judicata*, and a bar to the relief sought in this suit. That established the validity of the original donation, and binds the complainants in this case. It is sufficient if the same questions are presented by the pleadings, or might have been presented and decided under

the issues.   *Girardin* v. *Dean,* 49 Texas, 243; *Greathead* v. *Bromley,* 7 T. R. 456; *Davis* v. *Talcott,* 12 N. Y. 184; *Barrett* v. *Failing,* 8 Ore. 152; *Bellinger* v. *Craine,* 31 Barb. 537; Freeman on Judgments, (3d ed.) sec. 275; *Long* v. *Webb,* 24 Minn. 380; *Armstrong* v. *St. Louis,* 69 Mo. 409; *Ruegger* v. *Railroad Co.* 103 Ill. 449; *Hamilton* v. *Quimby,* 46 id. 90; *Kelly* v. *Donlin,* 70 id. 378; *Garrick* v. *Chamberlain,* 98 id. 620; *Rogers* v. *Higgins,* 57 id. 244; *Bailey* v. *Bailey,* 115 id. 551.

The authorities are uniform that *res judicata* covers whatever might have been litigated in the former suit.   *Aurora City* v. *West,* 7 Wall. 82; *Fischli* v. *Fischli,* 1 Blatchf. 360; *Smith* v. *Ontario,* 18 id. 454; *Lindsley* v. *Thompson,* 1 Tenn. Ch. 272; *Knight* v. *Atkinson,* 2 id. 394; *Dewey* v. *Peck,* 33 Iowa, 242; *McGregor* v. *McGregor,* 21 id. 441; *Faught* v. *Faught,* 98 Ind. 470; *Bates* v. *Spooner,* 45 id. 489; *Petersine* v. *Thomas,* 28 Ohio St. 596; *Martin* v. *Rooney,* 41 id. 141; *McMiken* v. *Morgan,* 9 La. Ann. 208; *Preble* v. *Supervisors,* 8 Bliss, 358.

As to identity of parties, see *Springfield* v. *Edwards,* 84 Ill. 636; *State* v. *Railroad Co.* 13 S. C. 290; *Sabin* v. *Sherman,* 28 Kan. 289; *Ferry* v. *Waterbury,* 35 Conn. 526.

It makes no difference that the railway company and the town were co-defendants, as the decree settled the validity of the donation as between these parties.   *Louis* v. *Brown Township,* 109 U. S. 162; *Corcoran* v. *Canal Co.* 94 id. 741; *Scotland County* v. *Hill,* 112 id. 188.

As to the point of counsel that the decree is not *res judicata,* because, in the *Pinckney case,* the town by its answer admitted the validity of the bonds, there is little need of any extended discussion.   It is well settled that where a judgment is entered where the facts are admitted upon the record, is as conclusive as a judgment after litigation.   *Hillsboro* v. *Nicholls,* 46 N. H. 385; *Gates* v. *Preston,* 41 N. Y. 113; *Valkenburgh* v. *City,* 43 Wis. 574; *Secrist* v. *Zimmerman,* 55 Pa. St. 446;

*Chamberlain* v. *Preble*, 11 Allen, 370; *Wolford* v. *Compton*, 79 Va. 333; *Brown* v. *Mayor*, 66 N. Y. 385.

The court can not declare these bonds void as against these defendants. They bought in reliance on the Pinckney decree, and no State court can impair the obligation of their contract. *Gelpcke* v. *Dubuque*, 1 Wall. 175; *Trust Co.* v. *Debolt*, 16 How. 432; *Green* v. *Conness*, 109 U. S. 104; *County of Rolls* v. *Douglas*, 105 id. 728; *Douglas* v. *Pike County*, 101 id. 677; *Olcott* v. *Supervisors*, 16 Wall. 678; *Havemeyer* v. *Iowa City*, 3 id. 294; *Stevens* v. *Pratt*, 101 Ill. 266.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

This is a bill filed on April 28, 1882, in the circuit court of Ogle county, by John Harmon, Samuel Domer, Daniel Fager and Reuben S. Marshall, resident property owners and tax-payers in the town of Mount Morris and county of Ogle, against the Auditor of the State, the treasurer and clerk of said county, the collector of said town and the holders of the bonds here-inafter described, charging that fifty bonds of said town of $500 each and twenty-five bonds of said town of $1000 each, dated May 3, 1875, payable May 1, 1885, drawing ten per cent interest payable annually, and all issued and signed by John W. Hitt, the supervisor, and H. H. Clevidence, the town clerk of said town, are void for want of power in said super-visor and clerk to issue the same, and praying that the same may be decreed to be null and void, and that the officers of the law may be perpetually enjoined from collecting any taxes to pay the same from the property of complainants and the other tax-payers of the town. Answers were filed denying the allega-tions of the bill and setting up the defences hereinafter men-tioned. The circuit court dismissed the bill for want of equity and its decree has been affirmed by the Appellate Court, from which the case comes to us by appeal.

The same indebtedness involved in this suit has already been passed upon by this court in *Chicago and Iowa Railroad*

*Co. et al.* v. *Pinckney et al.* 74 Ill. 277.   In that case Daniel J. Pinckney, John W. Hitt, Jacob H. Munnua, John E. McCoy, Milton E. Getzendaner and John Sprecher, then resident property owners and tax-payers of the town of Mount Morris, filed their bill on November 11, 1871, in the circuit court of Ogle county, against the Chicago and Iowa Railroad Company, the town of Mount Morris, Charles Newcomer, the then supervisor and Henry H. Clevidence, the then town clerk of said town, "to enjoin the town and its officers from issuing bonds to the Chicago and Iowa Railroad Company in the sum of $75,000." After answers and replications filed and hearing had, the circuit court decreed in accordance with the prayer of the bill, and, upon appeal, this court, at the September term, 1874, held that the town had power to issue the bonds, and reversed the decree of the circuit court and dismissed the bill filed therein, as will be seen by reference to the opinion in 74 Ill. 277.

After the opinion of this court in the *Pinckney case* had been filed and while the proceedings on rehearing were still pending, negotiations were begun for a settlement of the claim of the railroad company against the town for the $75,000 of bonds.  Communications in writing, dated November 14, 1874, signed by property owners and tax-payers in the town, were addressed to the complainants in the Pinckney suit, advising a compromise with the company and pledging the influence of the subscribers to induce the town to assume the expenses of the litigation.   Two of these communications were signed respectively by Reuben S. Marshall and Samuel Domer, two of the appellants herein.   At a special town meeting held on March 19, 1875, resolutions were passed, accepting a previous proposition made by the president of the railroad company to the town supervisor to take bonds to the amount of $50,000 in lieu of the bonds amounting to $75,000, agreeing that the town would pay all the expenses of the Pinckney suit amounting to $1600, and thanking the supervisor for his efforts in.

making the settlement. At the annual town meeting held on April 6, 1875, the proceedings of the special town meeting and the resolutions there adopted were "fully ratified and approved."

By this compromise the town was saved from a possible indebtedness of $25,000. Its liability to issue bonds to the amount of $75,000, which the railroad company was entitled to receive by virtue of the decision made in its favor, was discharged by the issuance of bonds amounting only to $50,000. The latter bonds, so issued in compromise of the railroad company's claim, are the bonds hereinbefore referred to as being dated May 3, 1875, fifty of $500 each and twenty-five of $1000 each, and which this bill is filed to cancel. All of them are now in the hands of innocent holders, who have purchased them in good faith, relying upon the former decision of this court as to their validity. One of the appellees, the German Insurance Company of Freeport, owns $26,500 of them purchased for value and before maturity.

The defendants set up the former proceedings in the Pinckney suit, as a bar to the relief sought by the present suit.

Both the Chicago and Iowa Railroad Company and the town of Mount Morris were parties to the Pinckney suit. In that suit it was decided that the town had the power to issue the bonds, and that the railroad company was entitled to have them issued in pursuance of the vote taken and by reason of its compliance with the conditions exacted of it. The decision so made was final and binding as between the railroad company and the town, and, as between them, established the validity of the bonds. If the bonds had been issued and suit had been brought on them by the company against the town, it will not be claimed that the latter could have defended on the ground that the election, in pursuance of which the bonds were issued, was invalid.

It makes no difference that the railroad company and the town were both defendants in the Pinckney suit. "In chan-

cery suits, where parties are often made defendants because they will not join as plaintiffs, who are yet necessary parties, it has long been settled that adverse interests as between co-defendants may be passed upon and decided, and, if the parties have had a hearing and an opportunity of asserting their rights, they are concluded by the decree as far as it affects rights presented to the court and passed upon by its decree." *Corcoran* v. *Chesapeake and Ohio Canal Co.* 94 U. S. 741; *Louis.* v. *Brown Township*, 109 id. 162; *Scotland County* v. *Hill*, 112 id. 183.

The obligation, which rested upon the town to issue bonds. to the amount of $75,000 to the railroad company, was just as binding by reason of the decision in the *Pinckney case* as. though judgment had been rendered in a *mandamus* proceed-ing or in a suit on the bonds. If this be so, then the com-plainants, as citizens of the town, can not by a proceeding to prevent the collection of a tax to pay the bonds, dispute their validity upon any of the grounds which were or could have been litigated in the Pinckney suit. The law upon this subject is thus stated in Freeman on Judgments, (3d ed.) sec. 178:

"A judgment against a county, or its legal representatives, is a matter of general interest to all its citizens, is binding upon the latter, though they are not parties to the suit. A judgment for a sum of money rendered against a county im-poses an obligation against the citizens which they are com-pelled to discharge. Every tax-payer is a real, though not a. nominal, party to such judgment. If, for the purpose of pro-viding for its payment, the officers of the county levied and endeavored to collect the tax, none of the citizens can, by in-stituting proceedings to prevent the levy or enforcement of the tax, dispute the validity of the judgment nor re-litigate any of the questions which were or which could have been litigated in the original action against the county."

The views of the text writer are sustained by the following authorities:    *Clark* v. *Wolf*, 29 Iowa, 197; *Treadway* v. *Rail-*

*way Co.* 39 id. 663; *State ex rel. Wilson* v. *Rainey,* 74 Mo. 229; *Commissioners* v. *Hinchman,* 31 Kan. 729.

It is claimed, however, that the Pinckney suit is to be regarded as a controversy between the complainants therein on one side and the defendants therein on the other side, and not merely as a controversy between two of the defendants, the railroad company and the town. In this view, it is urged that the decree in that suit can not be pleaded as a former adjudication in the present suit, for the reason that the complainants there were not the same persons as the complainants here. The proceeding instituted by Pinckney and others was a chancery proceeding. The present proceeding is also upon the chancery side of the court. Where the action is at law and a judgment in an action at law is pleaded as a former recovery, the defence has a more restricted character than in a chancery suit.

The Pinckney bill was filed by certain property owners and tax-payers, as representatives of a class. Though not formally stating, that it is filed on behalf of all the other tax-payers in the town, yet it constantly refers to them and their interests in the questions involved. It alleges that "your said orators and *the other tax-payers* of said town" will suffer injury; that the issue of the bonds will be in violation of the rights "of your said orators and *the other tax-payers of said town,*" and an attempt to deprive "your orators and *the other tax-payers* of said town" of their property, etc., and to take the property of "your said orators *and said other tax-payers of said town*" for a private use without compensation to "your said orators *and said other tax-payers.*" Its prayer is, that the town be restrained from "collecting any taxes *upon the taxable property of said town of Mount Morris* to pay said bonds."

Moreover, the Pinckney suit was adopted by the town as its own litigation, when the town paid the expenses of it and compromised it through the town officers and by resolutions of the town meetings.

The present suit was begun by Harmon and others, also tax-payers and property owners of the town, as representatives of the same class, for whose benefit the Pinckney bill was filed. The complainants in this proceeding were *represented* by the complainants in the former suit, and are therefore bound by the decree therein entered.   The remedy in suits of the character here indicated is in the interest of a class of individuals having common rights that need protection, and, in the pursuit of that remedy, individuals have the right to represent the class to which they belong.   This jurisdiction, in some respects, rests on the principles of a proceeding *in rem.*

We, therefore, think that there is sufficient identity between the parties filing the present bill and those who filed the bill in the *Pinckney case* to justify the pleading of the decree entered there as *res judicata* in this case.   The views here expressed are sustained by the following authorities:   *State* v. *C. & L. Railroad Co.* 13 So. Car. 290; *Ferry* v. *Town of Waterbury,* 35 Conn. 526; *Sabin* v. *Sherman,* 28 Kan. 289; *Smith* v. *Swormstedt,* 16 How. 303.

It is claimed, however, that the cause of action in the present suit is not the same as the cause of action in the Pinckney suit.   To support this position reference is made to the case of *Chicago and Iowa Railroad Co.* v. *Mallory,* 101 Ill. 583, where it was held, that the provision in the charter of the Chicago and Iowa Railroad Company for holding an election to authorize subscriptions and donations by the town requires such election to be held by three judges and two clerks as in general elections, and that an election at a town meeting, presided over by one moderator and with only one clerk, is void and confers no authority to issue the bonds.   The election in the town of Mount Morris, which authorized the issuance of the bonds above specified, was held at a town meeting, presided over by one moderator, and, therefore, falls within the terms of the decision in the *Mallory case.*   It is too late, however, to apply the doctrine of the *Mallory case* to the Mount Morris bonds.

The opinion in the *Pinckney case* only discusses two points: first, whether the constitution of 1870 prohibited a donation by a town to a railroad, where the donation was authorized by a vote of the people before the adoption of the constitution, and second, whether the vote in favor of the Mount Morris donation was void by reason of defects in the petition for the election and in the notice of the election. As the opinion makes no reference to the point discussed in the *Mallory case*, as the same is above stated, counsel say that the Pinckney decision is not *res judicata* as to that point. We are, therefore, asked to set aside the bonds held by the appellees in this case, because the election, which authorized their issuance, was held at a town meeting presided over by one moderator.

The value of a plea of former recovery is not to be determined by the reasons, which the court rendering the former decree or judgment may have given for doing so. (*Girardin* v. *Dean*, 49 Texas, 243; *Greathead* v. *Bromley*, 7 T. R. 456; *Barrett* v. *Failing*, 8 Ore. 152; Freeman on Judgments, (3d ed.) sec. 275; *Davis* v. *Talcott*, 12 N. Y. 184.) Nor is such former judgment or decree conclusive only as to questions actually and formally litigated. It is conclusive as to all questions *within the issue* whether formally litigated or not. In *Beloit* v. *Morgan*, 7 Wall. 619, it is said: "The principle of *res judicata* reaches further. It extends not only to the questions of fact and of law which were decided in the former suit, but also to the grounds of recovery or defence, which might have been, but were not presented."

In *Rogers* v. *Higgins*, 57 Ill. 244, it was held: "When a complainant in chancery presents his cause of action before the court, he should bring forward and urge all the reasons which then existed for its support. After a determination of the suit, the controversy can not be re-opened to hear any additional reason which before existed, and was within the knowledge of the party in support of the same cause of action. The principle of *res judicata* embraces not only what has actu-

ally been determined in the former suit, but also extends to any other matter properly involved, and which might have been raised and determined in it."

To the same effect are *Ruegger* v. *Railroad Co.* 103 Ill. 449; *Hamilton* v. *Quimby,* 46 id. 90; *Aurora City* v. *West,* 7 Wall. 82; *McMicken* v. *Morgan,* 9 La. Ann. 208; *Preble* v. *Board of Supervisors,* 8 Biss. 358.

We think the point now raised against the bonds was presented by the pleadings and issues in the Pinckney suit and might have been raised and determined in that suit. The bill there refers to the sections of the railroad charter, which provide for calling the election. It alleges "that the *said special town meeting and election,*" etc., "are in direct conflict with the provisions of the constitution of the State," etc. It further alleges that the "ballots deposited by the voters of said town at said special town meeting and election for said donation were illegal and void in this, that *the said voters had no legal power to determine by the casting or depositing of their said ballots as aforesaid at said special town meeting and election whether the said town should * * * make such donation of $75,000,* or to bind, * * * by their votes deposited at said special town meeting and election, the said town to make such donation or to issue their said bonds," etc. The prayer is that the town, etc., "be enjoined from making any donation in bonds * * * *under and in pursuance of said special town meeting and election,*" etc., and that "*said special town meeting and election held thereunder* may be decreed to be altogether null and void," etc. The answer admits the provisions of the charter, as alleged, and also admits the special town meeting and election, and avers, that "*said special town meeting and election was held, conducted and return thereof made in all respects as required by law.*" The decree found the equities for the complainants and that the allegations in the bill were true. The order of this court reversed the decree and dismissed the bill.

It is very evident from this review, that the validity of the election, authorizing the bonds to be executed, was at issue in the Pinckney suit. Not one question alone, but every question affecting the validity of the election, was there at issue. Under the issues formed by the pleadings, the question whether the election should have been conducted as a general election with three judges and two clerks instead of being conducted as a town meeting election with one moderator and one clerk, was just as much involved as the question in regard to the sufficiency of the petition and notice, which was discussed by this court in its opinion. The fact that the point, afterwards decided in the *Mallory case* and now pressed upon our attention here, was not brought to our notice in the *Pinckney case* does not destroy the force of the Pinckney decree as a bar to the present proceeding. As was said in *Preble* v. *Board of Supervisors, supra:* The complainants could not divide their cause of action, setting up one ground of illegality in that suit, and if they failed in that, bring a second suit for a like purpose, setting up another ground of illegality. They should have disclosed the entire wealth of their case at once.

Some other points are made by counsel for appellants, but they are of minor importance, and we do not deem it necessary to discuss them. We have carefully weighed them and do not consider them to be well taken. If there were no other answer to them, they could not be allowed to disturb the decree of the Appellate Court in this case for the reason hereinafter stated.

This record shows beyond question, that the defendant bondholders are purchasers for value without notice and that they bought their bonds relying on the Pinckney decree. This being so, we have no power to now declare the donation void as against these defendants, even though the decision in the *Pinckney case* was wrong. A State court can not, by a *decision,* any more than the State legislature can, by a statute, impair the obligation of a contract.

By a series of decisions between 1853 and 1859 the Supreme Court of Iowa upheld the right of the legislature of that State to authorize municipal corporations to subscribe to certain railroads and to issue bonds accordingly. In a case that came before it after 1859 that court overruled its former decisions upon that subject. In *Gelpeke* v. *City of Dubuque,* 1 Wall. 175, the Supreme Court of the United States held that the last decision of the Iowa court could not affect the validity of bonds issued and put upon the market while its earlier decisions were in force, and laid down the doctrine, which has since been firmly adhered to, that, if a contract, when made, was valid under the constitution and laws of a State, as they had been previously expounded by its judicial tribunals and as they were understood at the time, no subsequent action by the legislature *or judiciary* can impair its obligation. *Havemeyer* v. *Iowa City,* 3 Wall. 294; *Olcott* v. *Supervisors,* 16 id. 678; *Green County* v. *Conness,* 109 U. S. 104; *Douglass* v. *County of Pike,* 101 id. 677; *County of Rolls* v. *Douglass,* 105 id. 728; *Stevens* v. *Pratt,* 101 Ill. 206.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*