GAMBLE et al. v. CITY OF SAN DIEGO et al.

(Circuit Court, S. D. California. March 22, 1897.)

1. ABATEMENT—PENDENCY OF ANOTHER SUIT—TAXPAYERS' SUITS.
    A pending suit by a nonresident taxpayer, in behalf of herself and all other nonresident taxpayers, to annul a contract made by the city, may be pleaded in abatement of a suit for the same object subsequently brought in the same court by other nonresident taxpayers.

2. SAME—STATE AND FEDERAL COURTS.
    A suit in a state court cannot be pleaded in abatement of a suit as to the same matter in a federal court.

3. COURTS—CONCURRENT JURISDICTION.
    Where a state court has first taken cognizance of a cause of which that court and the federal court have concurrent jurisdiction, the federal court will dismiss a suit brought in that court as to the same matter, or suspend proceedings therein until the final action of the state court.

4. SAME.
    Where separate suits seeking the same relief have been filed in a state court and in a federal court on the same day, upon a motion in the federal court to suspend proceedings in the suit brought therein proof will be heard as to which suit was instituted first.

Works & Works, Works & Lee, and Trippet & Neale, for complainants.

H. E. Doolittle, Gibson & Titus, and W. J. Hunsacker, for defendants.

ROSS, Circuit Judge. This is a suit in equity, the bill in which was filed in this court August 27, 1896, not only on behalf of the complainants, but, according to its averments, on behalf of all other property owners and taxpayers of the city of San Diego who are not citizens of the state of California. The bill alleges, among other things, that the complainant William A. Gamble is a resident and citizen of the state of Ohio, and the complainant Elvira Carver is a resident and citizen of the state of Massachusetts, and that all of the defendants are residents and citizens of the city of San Diego, state of California; that each of the complainants is the owner of real estate in the defendant city; that the amount of taxes that each of the complainants would be compelled to pay by reason of the levying of the taxes necessary to pay the principal and interest of the bonds mentioned in the bill will exceed the sum of $2,000, and that the property owners and taxpayers of the defendant city who are not citizens of the state of California number about 700, and each of them has a direct interest with the complainants in the relief sought by them; that the population of the defendant city has never at any time mentioned in the bill exceeded 20,000 inhabitants; that the average daily consumption of water

by the city and its inhabitants, for all purposes, during all of the times mentioned in the bill, has never exceeded 150 miner's inches of water per day; that the defendant city is now receiving, and since June 25, 1889, has received, its supply of water for all purposes from the San Diego Water Company, a corporation organized under the laws of the state of California to supply and sell water to the city and its inhabitants for a compensation to be charged therefor as fixed by the legislative branch of the city council from time to time as required by law; that the San Diego Water Company, for the purpose of carrying on its said business, secured from the city a franchise to lay and maintain in and along the streets, lanes, and alleys thereof its water mains and pipes, and to furnish, through such system, water to the consumers of the city, and at all the times mentioned in the bill has furnished water to the city and its inhabitants for all useful and necessary purposes; that, in and by section 14 of article 11 of chapter 2 of the special charter of the city of San Diego, it is provided that all ordinances incurring indebtedness or liability against the treasurer of the city must, before being passed by the common council, be presented to the city auditor, and, until he certifies in writing upon the ordinance that such indebtedness can be incurred without violation of the provisions of the charter, no further action shall be had upon the same by the common council; that on the 7th day of May, 1896, the common council of the defendant city, by ordinance adopted by it, assumed and attempted to authorize the execution by the mayor of the city of a certain contract on the part of the city with the defendant Southern California Mountain Water Company, a corporation organized under the laws of the state of California, which ordinance is set out in the bill; that thereafter, and on the 9th day of May, 1896, the mayor of the city and the Southern California Mountain Water Company, assuming to act in pursuance of that ordinance, entered into the contract which is set out in full in the bill; that on the 5th day of June, 1896, the common council of the city assumed and pretended to pass and adopt an ordinance calling a special election submitting to the voters of the city the proposition of the incurring of a debt for the purpose of paying for the water rights, rights of way, distributing system, and other property mentioned and described in the contract between the city and the Southern California Mountain Water Company, which ordinance the bill sets out at large; that each and all of the ordinances above mentioned were passed and adopted by the common council of the defendant city before and without obtaining the certificate of the auditor of the city upon such ordinance, or otherwise, that the indebtedness or liability created by such ordinance could be incurred without the violation of any of the provisions of the charter of the city; that the debt and liability sought to be created by virtue of the contract between the city and the Southern California Mountain Water Company could not be paid out of the revenue provided for the fiscal year of 1896, or for any of the years following; that at the time of the execution of the contract there had been no assent of two-thirds of the qualified electors of

the city voting at an election held for the purpose of obtaining their assent to the incurring of such indebtedness and liability; that on the 5th day of June, 1896, the common council assumed and pretended to pass an ordinance by which the common council assumed to provide for the publication of the notice of a special election to be held in the city on the 27th day of June, 1896, to vote upon the issuance of the bonds, amounting to $1,500,000, for the purposes specified therein, which ordinance the bill sets out in full; that the clerk of the defendant city, in pursuance of the ordinance last mentioned, published a notice of such special election, to be held in the city, for the period of two weeks prior to June 27, 1896, in the San Diegan Sun, the official newspaper of the city of San Diego; that on the 11th day of May, 1896, the common council of the defendant city ordered and directed that the contract of May 9, 1896, between the Southern California Mountain Water Company and the defendant city, and the plans and estimates of the engineer, be printed in book form, and copies thereof sent to the registered voters of the city; that the board of public works of the city caused the contract and plans and estimates to be published in book form, and thereafter, on or about June 10, 1896, the clerk of the defendant city, under and by virtue of the order of the common council, mailed and caused to be mailed a copy of the contract, plans, and estimates to the registered voters of the city, as directed by the council; that in pursuance of the ordinance mentioned an election was held in the city on the 27th day of June, 1896, at which election the question of issuing bonds of the city in the sum of $1,500,000, for the purposes in the ordinances set forth, was voted upon, and was by the electors, as shown by the tally sheets of the election, carried by a vote of more than two-thirds majority of the voters voting at the election; that the proposition, as submitted to the voters of the city, was a joint proposition for the incurring of an indebtedness for the acquisition by purchase of the water, water rights, and other property, as shown by the ordinance, and the construction of a public improvement for the city, to wit, a distributing system, rights of way, and reservoirs,—the vote, as called for and given, being upon a proposition to incur an indebtedness for both such acquisition by purchase of said property and the construction of such improvement in the gross sum of $1,500,000, and not separately.

The bill further set out the form of the ballots submitted and voted at the election, and alleged that, before the question of incurring the indebtedness was submitted to the vote as aforesaid, the common council of the defendant city had caused to be made what purported to be plans and estimates of the cost of the proposed improvement, but that the purported plans and estimates were not such in fact, for various reasons specified in the bill. The bill further alleged that the contract between the defendant city and the Southern California Mountain Water Company was made and executed before the election was held, and without any notice given by the council inviting sealed proposals for furnishing the labor and materials for the proposed improvements, nor have such bids ever been made; that the notice given by the council of the special election did not set forth

fully or correctly the purposes for which the indebtedness was to be incurred, as required by law; that the purpose for which the indebtedness was to be incurred was for the carrying out of the contract between the defendant city and the Southern California Mountain Water Company, and the payment of the sums of money therein provided for, at the times and in the manner therein specified, and not otherwise, and that, unless enjoined from so doing by this court, the common council and officers of the defendant city will use the money derived from the sale of the bonds in making the payments provided for by the contract, and, in order to procure the voting of the bonds, it was represented by the defendants and others who supported the measure at the polls that the contract was the one under which the money derived from the bonds would be expended, and copies of that contract were, by order of the council of the defendant city, mailed in printed form to the voters of the city, and represented it to be the basis for the proposed bonds, and the voters were thereby induced to, and did, vote therefor, with the understanding and belief that the moneys to be realized therefrom would be used to carry out the contract, and would not otherwise have voted therefor; that the contract and the execution thereof were unauthorized and in violation of law, and beyond the power of either the defendant city or the Southern California Mountain Water Company to make, for various reasons stated in the bill; that since the election was held, to wit, on the 23d day of July, 1896, an ordinance was passed by the council of the defendant city authorizing and ordering the issuance of the bonds, which ordinance is set out at large in the bill; that the council of the defendant city and its mayor, treasurer, and auditor are about to, and will, unless enjoined by this court, issue the bonds of the city attempted to be provided for by the proceedings referred to, and will, unless enjoined by this court, use the proceeds of the sale of the bonds to carry out the contract of the defendant city with the Southern California Mountain Water Company. The prayer of the bill is that the contract be adjudged illegal and void, and that it be ordered surrendered for cancellation; that the defendant city and its officers, and the defendant Southern California Mountain Water Company and its officers, be, each and all, forever enjoined from setting up any rights, privileges, or benefits under the contract; that the proceedings of the common council and mayor and other officers of the defendant city in the passage and approval of the ordinances, and the election held thereunder to vote upon the proposition of the issuance of the bonds of the city, be declared illegal and void, and that the bonds in question, and all the proceedings leading up to the voting thereof, and the issuance of such bonds, be decreed null and void; and that each of the defendants be restrained from taking any further action towards the issuance or sale of such bonds, or the carrying out of the contract in question; and for such other and further relief as in equity may seem just.

All of the defendants except the Southern California Mountain Water Company joined in filing exceptions to the bill, and that company filed thereto separate exceptions, but of a similar nature. While these exceptions were under reference to a special master, all

of the defendants except the Southern California Mountain Water Company moved the court for leave to file two pleas to the bill, and on the same day the Southern California Mountain Water Company made a separate but similar motion. In these pleas the defendants allege: That on the 29th day of June, 1896, one Albert Meyer, a property owner and taxpayer within the city of San Diego, Cal., filed his complaint in equity against all of the defendants to the present bill in the superior court of the county of San Diego, state of California. That thereafter, to wit, July 14, 1896, H. I. Capron and O. M. Turner, residents and taxpayers of the city of San Diego, by leave of the superior court of that county filed a complaint in intervention in the suit there brought, and on the 3d day of November, 1896, R. Niccolls, Joseph Story, R. H. Dalton, H. Omerd, J. H. Smith, A. Overbaugh, Thomas J. Higgins, G. W. Magwood, Heber Ingle, George Nickson, J. A. P. Vawclain, J. H. Barbour, J. B. Hooker, B. Kampling, Putnam Field, W. B. Norris, C. Williams, John D. Parker, and R. H. Young, residents and taxpayers of the city of San Diego, by leave of the superior court of San Diego county filed their complaint in intervention in that suit. That on the 30th day of June, 1896, the San Diego Water Company, a corporation created and existing under the laws of the state of California, a resident and taxpayer of the city of San Diego, exhibited its complaint in equity against all of the defendants to the present bill in the superior court of the said county of San Diego. That, in and by the several complaints and complaints in intervention mentioned, the plaintiffs therein set forth the same cause of action as is stated and set forth in the complainants' bill in the present suit, and by the various prayers of those several complaints and complaints in intervention the parties plaintiff therein prayed the judgment and decree of the superior court of the county of San Diego, adjudging and determining that the contract executed by and between the city of San Diego and the Southern California Mountain Water Company, referred to and set forth in the complainants' bill of complaint in the present suit, be declared null and void; that the defendant city, its officers, and the Southern California Mountain Water Company, and its officers, be, each and all of them, forever restrained and enjoined from setting up any rights, privileges, or benefits under that contract, and from complying with the terms thereof; that neither the defendant city nor the Southern California Mountain Water Company had power or authority to enter into the contract; that the proceedings had by the common council of the defendant city and its officers in the passage and approval of the ordinances mentioned and referred to in the complainants' bill in the present suit, and the election held thereunder, on the 27th day of June, 1896, to vote upon the proposition of the issuance of the bonds by the city of San Diego, mentioned and referred to in the ordinances and in the bill of complaint in the present suit, be declared illegal and void; that the bonds voted on the 27th day of June, 1896, and all proceedings leading up to the voting of those bonds and their issuance, be declared null and void; and that the superior court of San Diego county perpetually enjoin and restrain the defendants in those suits, and each of them, from taking any further

action towards the issuing or sale of the bonds or carrying out of the terms of the contract; and for general relief. That the defendants in the suit brought in the superior court of San Diego county, including the defendants to the present bill, appeared and filed their several answers to each of the complaints and complaints in intervention, which put in issue the allegations thereof. That thereafter, to wit, on the 21st day of September, 1896, all of the suits so pending in the superior court of the county of San Diego came on regularly for trial before that court, and by consent of all of the parties thereto an order was made by the said superior court consolidating all of the aforesaid actions, and thereupon they were tried by the said superior court as one action, and witnesses for plaintiffs and interveners therein and defendants therein were duly sworn and examined, and documentary evidence introduced by the respective parties upon the issues so made as aforesaid, and thereupon the consolidated action was submitted to the court for its decision, and on the 17th day of November, 1896, the superior court of San Diego county made and filed its decision in writing in favor of the defendants to the present bill, and against the plaintiffs and interveners therein, and thereafter, to wit, on the 17th day of November, 1896, the said superior court rendered and entered its judgment in the consolidated action, in accordance with its written decision, in favor of the defendants and against the plaintiffs and interveners therein. That no appeal has been taken from that judgment. That the time for appeal therefrom has not expired, but that the plaintiffs and interveners in the consolidated action have already taken the preliminary steps to have the judgment and the proceedings in that action reviewed on appeal by the supreme court of the state of California. That the rights and interests claimed and the relief sought by the complainants in the present bill are the same rights and interests involved and the same relief sought in the said several suits in the superior court of the county of San Diego, state of California. All of which matters and things the defendants to the present bill plead in abatement, and ask leave to file as a defense to the bill of the complainants herein.

A separate plea filed by all of the defendants jointly, except the Southern California Mountain Water Company, and also by that company as a separate and distinct plea, alleges: That on the 29th day of June, 1896, one F. S. Nicholson, a citizen of the state of New York, and a property owner and taxpayer within the city of San Diego, state of California, exhibited her bill of complaint in this court against the defendants to the present bill, on behalf of herself and all other property owners and taxpayers of the city of San Diego who are not citizens of the state of California, to obtain a decree of this court determining and adjudging that the contract executed by and between the city of San Diego and the Southern California Mountain Water Company, referred to in the complainants' bill of complaint in the present suit, be canceled and declared null and void, and that the defendant city of San Diego and its officers, and the Southern California Mountain Water Company and its officers, and each of them, be forever restrained and enjoined from setting up any

rights, privileges, or benefits under the contract, or in carrying out the terms thereof; that neither the city of San Diego nor the Southern California Mountain Water Company had power or authority to enter into the contract, and that the proceedings mentioned in the bill of complaint in the present suit by the common council of the defendant city and its officers in regard to the passage and approval of the various ordinances mentioned in the bill herein, and the election held under those ordinances on the 27th day of June, 1896, to vote upon the proposition of the issuance of the bonds mentioned in the bill of complaint herein, be declared illegal and void; that the bonds voted on June 27, 1896, and all proceedings leading up to the voting of the bonds and the issuing thereof, be declared null and void; that a writ of injunction be granted against the defendant city and its officers, restraining and enjoining them, and each of them, from taking any further action towards the issuing and sale of the bonds; and for such other and further relief as the nature of the case should require. That on the 23d day of July, 1896, the said F. S. Nicholson exhibited to this court her amended complaint, wherein she set forth substantially the same facts as were stated in her original bill, and prayed the same relief asked in and by her original bill. That the cause of action and the relief sought by said Nicholson in and by her original and amended bills of complaint are the same as the cause of action and the relief sought by the complainants in the present suit. That all of the defendants to the present suit, except the Southern California Mountain Water Company, appeared and filed their demurrers to the amended bill of F. S. Nicholson, and also exceptions thereto, and the defendant Southern California Mountain Water Company filed separate but similar demurrers and exceptions thereto, all of which are still pending and undetermined. All of which matters and things the defendants to the present bill plead in abatement, and ask leave to file in defense thereof.

Upon the coming on of the hearing of the motions for leave to file these pleas, all of the defendants thereto moved this court for an order dismissing the present suit and discontinuing further proceedings therein, basing the motion upon the records and pleadings and files in the cause, and upon a certified copy of the transcript on appeal to the supreme court of California in the case of Albert Meyer v. The City of San Diego et al., defendants, H. I. Capron, O. M. Turner, R. Niccolls et al., intervenors, and upon certain admissions of counsel to the effect that the defendants and intervenors in the suit brought by Albert Meyer in the superior court of San Diego county had appeared in that suit prior to the institution of the present suit in this court. At the same time the complainants in the present bill asked leave to file an affidavit of John G. Capron, to which objections were interposed by the defendants to the present suit. That affidavit states, among other things: That on the 11th day of December, 1895, the Consolidated Water Company, a corporation organized and doing business under and by virtue of the laws of the state of West Virginia, brought its suit in this court against the city of San Diego and certain of its officers, E. S. Babcock, and the

Southern California Mountain Water Company, by bill in equity, charging, in substance and effect, that the city of San Diego was about to enter into a contract with the Southern California Mountain Water Company to purchase from that company a water right to 1,000 inches of water, and for the construction of a distributing system by the company for the city, and that, unless enjoined by this court, such contract would be made, and that the city was about to, and would unless enjoined by this court, issue and sell its bonds for the purpose of carrying out such contract and purchasing the said water right, and for the construction of said distributing system. That, at the time the bill of the Consolidated Water Company was filed, propositions had been made by the city of San Diego to the Southern California Mountain Water Company for the purchase of said water right and the construction of said distributing system, but no contract therefor had actually been made. That various grounds were alleged in the bill brought by the Consolidated Water Company why such contract and the issuance of such bonds would be illegal and void and injurious to that complainant,—among others, that the making of such contract and the issuance of such bonds were beyond the power and authority of either the city of San Diego or the Southern California Mountain Water Company. And that this court was, in and by that bill of complaint, asked to decree: (1) That the making of the proposition to the Southern California Mountain Water Company, the acceptance thereof, and all proceedings and acts of the common council of the city of San Diego relating thereto, were the result of, and brought about by, bribery and fraud, as in the bill in that case alleged, and that any contract made in pursuance thereof would be fraudulent and void; (2) that neither the city of San Diego nor the Southern California Mountain Water Company had power or authority to enter into the contract proposed to be made in pursuance of the proposition and its acceptance, and that any such contract, if made, would be void; (3) that the defendants to that bill, and each and all of them, be enjoined from entering into the alleged proposed contract, or any contract of similar import, and from the submission of the question of issuing the bonds of the city to carry out any such contract, and from issuing or disposing of any such bonds or their proceeds, if voted,—and for such other and further relief as should to the court seem just and proper in the premises. That thereafter, and on the 27th day of July, 1896, the Consolidated Water Company made application to this court for leave to file a supplemental bill, and on the 14th of August, 1896, by leave of the court first had and obtained, filed its amended bill in its suit, making parties complainant thereto, together with the original complainant, Constantine W. Benson and Henry Livesley Cole, and, after the filing of that amended bill, again made application to this court for leave to file a supplemental bill in connection therewith. That on the 19th day of August, 1896, the defendants in that action, being the same defendants now before the court in the present suit, with the exception of E. S. Babcock, made a motion to strike from the files the said amended bill, filed their demurrer to the petition therefor, and objected to the filing of the said last-mentioned supplemental

bill. That on the 2d day of September, 1896, the demurrer to the said amended bill, and motion to strike the same from the files, demurrer to the said petition for leave to file the supplemental bill, and objections to the filing thereof, were submitted to this court (Judge Wellborn presiding), and are still pending, under advisement. That in and by the said last-named supplemental bill, offered and proposed to be filed by the said complainants, it was alleged that, since the commencement of the original action by the Consolidated Water Company, the city of San Diego and the Southern California Mountain Water Company had, as was alleged in the original bill that they would do unless enjoined by the court, made and entered into a written contract for the purchase by the city from the Southern California Mountain Water Company of a water right to 1,000 inches of water, and the construction of a distributing system for the city, and that the city had passed and adopted an ordinance calling an election to submit to the voters of the city a proposition to issue bonds in the sum of $1,500,000 to carry out the terms and provisions of said contract. And that it was alleged in said supplemental bill that the said proposed contract was illegal and void, for certain reasons in said bill set forth, and that the proceedings for the issuance of such bonds were illegal and void, for reasons therein set out. And that it was alleged both in the original and amended bills in the suit of the Consolidated Water Company, and the supplemental bill proposed to be filed therein, that the bonds proposed to be issued would be illegal, and would, if sold to innocent purchasers, burden the property owned in the city of San Diego, including the property held as security for the bonds of the San Diego Water Company owned by the Consolidated Water Company, with heavy and illegal taxes for 40 years to come, depreciate the same in value, and work the complainants irreparable injury. And that the prayer for relief in said proposed supplemental bill was as follows:

"Wherefore, your orators pray that they be granted the relief prayed for in their amended original bill herein, and that the said city and its officers, made defendants herein, be perpetually enjoined from issuing or selling the bonds as the result of said election, and from paying any money for the delivery of any bonds to the said Southern California Mountain Water Company or any one else on account of said contract, or in pursuance of or as performance or part performance thereof; that said contract and proceedings for the issuance of said bonds be declared illegal and void, and that the said Southern California Mountain Water Company be required to deliver up said contract for cancellation; and that the same be by this court canceled and annulled."

The proffered affidavit of Capron further states that the cause of action set forth in the original bill filed by the Consolidated Water Company, and in its amended bill, and the supplemental bill sought to be filed by it, and the grounds upon which it was in those pleadings claimed that the proceedings of the common council of the city of San Diego were illegal and void, and the relief sought therein, were the same as in the present suit. The proffered affidavit of Capron further states: That on the 29th day of June, 1896, one F. S. Nicholson filed her bill of complaint in this court against all of the defendants named in the bill of the Consolidated Water Company, except E. S. Babcock; the object thereof being to have set aside and de-

clared void the contract entered into between the city of San Diego and the Southern California Mountain Water Company, and to enjoin the common council of the city from issuing the bonds of the city for the purpose of carrying out that contract; the grounds for the relief asked being, in substance, the same as some of the grounds set forth in the bill of complaint of the Consolidated Water Company. That in and by the Nicholson bill the complainant prayed the court for a writ of injunction against the city of San Diego and its officers, restraining them from taking further action towards the issuance or sale of the bonds, and the use of any money derived from the sale thereof in the construction of waterworks or the acquisition of water rights, reservoirs, reservoir sites, meter-house sites, and rights of way, of and from the Southern California Mountain Water Company, and further prayed as follows:

"(a) That the proceedings heretofore had by said common council, the mayor, and other officers of said city in the passage and approval of said ordinances and the election held under said ordinances to vote upon the proposition of the issuance of the bonds of said city, as set out in said ordinances, for the sum of $1,500,000, be declared illegal and void. (b) That the said pretended contract between said city and the Southern California Mountain Water Company, as set out in Exhibit G, upon the final hearing be declared and decreed to be null and void, and that said city and said water company be perpetually enjoined from carrying out the terms of said contract."

That thereafter, and on the 9th day of July, 1896, the above-named Constantine W. Benson and Henry Livesley Cole filed their petition in said suit for leave to intervene, and presented therewith their complaint in intervention, in which the same grounds for the setting aside of the contract and enjoining the issuance of the bonds were set forth as were contained in the amended bill in the suit of the Consolidated Water Company, and the same relief was asked for therein. That thereafter, and on the 23d day of July, 1896, the complainant in the suit, by leave of the court, filed her amended bill, setting forth more fully and in detail the same cause of action, and asking for the same relief, as in her original bill. That the defendants to the suit demurred to the petition of the said Benson and Cole to intervene, and also filed exceptions to the amended bill of complaint of the complainant, and also a demurrer to the bill of complaint, and that on September 7, 1896, the several exceptions to the bill were referred to a master, and that all of the matters above mentioned are still pending in this court and undisposed of. That in each and all of the cases above mentioned the defendants thereto have contended and maintained that this court has no jurisdiction thereof, on the ground, in the case of the Consolidated Water Company, that necessary and indispensable parties resident within the state were not made parties to the suit, and, in the case of Nicholson, that the amount in controversy was not sufficient to give the court jurisdiction, and that the question raised as to the jurisdiction of the court in both of those suits is still under advisement and undetermined. That the suit of Albert Meyer, mentioned in the pleas in abatement in this suit, offered to be filed, was commenced in the state court on the 29th day of June, 1896, being the same day on which the bill of complaint of the said Nicholson was filed in this court. That other taxpayers

mentioned in the proposed pleas in abatement made application for leave to intervene in that suit, which was allowed, and their complaints in intervention duly filed. That the San Diego Water Company brought its action in the state court on the 30th day of June, 1896, as set forth in the proposed pleas in abatement, and that thereafter those cases were consolidated and tried together in the state court. That on the 10th day of August, 1896, the plaintiff Meyer moved the state court for a change of the place of trial thereof, in support of which he filed a certain affidavit, setting out grounds upon which it was claimed that the presiding judge of that court was disqualified, and that he was joined in that motion by the interveners in the suit, upon the same grounds, who also filed an affidavit in support thereof, and that the motions for a change of the place of trial were by the court denied. The proposed affidavit of Capron, for the purpose of showing the disqualification of the presiding judge of the state court in which the consolidated cases were tried, also sets out various grounds upon which it is claimed by counsel for the complainants that judge was disqualified from trying the cause.

In support of the contention of counsel for the defendants to the present suit that the cause of action here involved is not the same as, but is entirely separate and distinct from, that involved in the suit heretofore brought and now pending in this court by the Consolidated Water Company, the defendants filed an affidavit of the city clerk of the defendant city, in which he states: That he is now, and ever since the 1st day of May, 1893, has been, such clerk. That in the month of December, 1895, pursuant to instructions from the common council of the city of San Diego, Edwin M. Capps, city engineer of that city, prepared plans and estimates of the cost of a water right to 1,000 inches of water, to be acquired by the city from the Southern California Mountain Water Company at a point near the Upper Otay Reservoir Site, located in the county of San Diego, and also estimates of the cost of the acquisition by the city of that reservoir and dam site, containing 423.13 acres, and also of the acquisition by the city of a right of way 20 feet wide from that dam site to the eastern boundary limits of the city, and a right of way 20 feet wide, within the limits of the city, for a pipe line by which to distribute such water to the city and its inhabitants. That on the 16th day of December, 1895, an action entitled "The Consolidated Water Company, Complainant, v. E. S. Babcock et al., Defendants," was commenced in this court for the purpose of having declared illegal and void the proposition set forth on page 26 of the bill in that action, or any contract which might be based thereon. That on the 27th day of August, 1896, the present suit was commenced, by the terms of the bill in which action the complainants therein sought to have the contract mentioned and described therein, between the city of San Diego and the Southern California Mountain Water Company, annulled and set aside, and declared illegal and void. That the proposition mentioned on page 26 of the bill in the case of The Consolidated Water Company v. E. S. Babcock et al., upon which that action is based, is an entirely different, separate, and distinct proposition and cause of action from that upon which the present suit is based. That the proposition, as it

79 F.—32

appears upon page 26 of the bill in the Consolidated Water Company's case, was a preliminary report by the joint water company committee of the common council of the city of San Diego, and that afterwards, pursuant to instructions by the common council, the said city engineer prepared plans and estimates for the purpose of determining the cost to the city of constructing and acquiring the property embodied therein. That thereafter such plans and estimates, after being prepared by the engineer, were adopted by the common council, and thereafter a contract for the purpose of acquiring the property embraced in that proposition was prepared and furnished to the council of the city, and thereafter the proposed contract came on regularly for hearing before the council, as a committee of the whole, on the 7th day of February, 1896, and upon such hearing the proposition, in its entirety, was defeated, and not adopted, and that the same never has since been taken up or considered by the council. That thereafter, pursuant to instructions from the council, the said engineer prepared plans and estimates of the cost of the acquisition by the city of the real property and water right described in the contract mentioned in the present suit, and the construction of the pipe line and distributing system therein mentioned. That the proposition which was defeated, and has never been adopted by the common council of the city, was the proposition upon which the Consolidated Water Company's case was based, and is entirely separate and distinct from that upon which the present suit is based, and especially so in these particulars: That the proposition upon which the Consolidated Water Company's case was based included the acquisition by the city of the following described real property:

"All that land contained in the county of San Diego, state of California, constituting the Upper Otay Reservoir Site and the Upper Otay Dam Site, located in sections 24, 25, and 36 of township 17 south, range 1 west, and sections 19 and 30 in township 17 south, range 1 east, San Bernardino meridian, consisting of 423.13 acres. Also, a right of way from the said dam site to the eastern boundary limits to the city of San Diego, 20 feet in width, for a pipe line. Also, a piece of land along the line of said right of way, west to the west line of Sweetwater valley, 150 feet square, commencing at a point on the north line of lot 13 of Encanto, 325 feet west from the northeast corner of said lot 13, thence running south 150 feet, thence west 150 feet, thence north 150 feet, and thence east 150 feet; also a piece of land located in said county of San Diego, commencing at a point south 24° and 30' west 1,458 feet from the southwest corner of section 30, township 17 south, range 1 east, San Bernardino meridian, thence south 150 feet, thence west 150 feet, thence north 150 feet, thence east 150 feet to the point of beginning; and also a right of way therefrom 50 feet wide, south 33° west to the 120-foot contour line of the said Upper Otay Reservoir Site; and also a right of way 25 feet in width from the said last-mentioned piece of land 150 feet square to the northern boundary line of the Janal Rancho, thence west along said boundary line to the 120-foot contour line of the said Upper Otay Reservoir Site."

—That the estimates of the said city engineer for the said described property were about $15,000, and that none of the said property is embraced or included in the proposition upon which the present suit is based. That the proposition upon which the Consolidated Water Company's case is based included also the building of a dam on the said Upper Otay Dam Site 120 feet high, and sufficient in capacity to form a reservoir to impound 632,448,000 cubic feet of

water. That the building of such dam involved an expense of from $275,000 to $300,000, and is not included or mentioned in the proposition upon which the present suit is based. That the proposition upon which the Consolidated Water Company's case is based also included the building of a dam by the Southern California Mountain Water Company at either the Barrett Dam Site or the Morena Dam Site, in said county of San Diego, of a sufficient capacity to impound at the Barrett Dam Site, above the 80-foot contour line, 632,448,000 cubic feet of water, and at the Morena Dam Site, above the 30-foot contour line, a dam of sufficient capacity to impound 632,448,000 cubic feet of water, while the proposition upon which the present suit is based does not provide for any dam to be built at Barrett's Dam Site at all. That the proposition upon which the Consolidated Water Company's case is based was to acquire a water right from the Southern California Mountain Water Company, at a point east of the Upper Otay Reservoir Site, of 1,000 inches of water, from an artificial aqueduct, for the sum of $485,000, while the proposition upon which the present suit is based is to acquire from the Southern California Mountain Water Company a right to 1,000 inches of water several miles nearer the city of San Diego, and at a much higher elevation, for the sum of $727,579. That the proposition upon which the Consolidated Water Company's case is based provided that the dam to be constructed at the Upper Otay Dam Site, and the pipe line to be built by the city, should cost $1,075,000, while the proposition upon which the present suit is based provides that the pipe line to be constructed by the city shall cost only $767,421.

In respect to the suit commenced in this court by the Consolidated Water Company on the 11th day of December, 1895, it is enough for the proper disposition of the motions in the present suit to say that that suit, having been commenced long prior to the making of the contract or the doing of any of the acts for the annulment of which the present suit was brought, in the nature of things, did not and could not embrace, as part of its subject-matter, the contract and proceedings involved in the present suit; for no such contract was then in existence, and, as a consequence, no act had been done in pursuance thereof. The suit brought by F. S. Nicholson in this court on the 29th day of June, 1896, was a suit by a nonresident taxpayer of the city of San Diego against the identical defendants who are defendants to the present suit. The acts constituting the alleged cause of action in that suit are the same acts of which complaint is made in this suit, and the same relief is prayed for in both suits. Manifestly, therefore, the Nicholson suit may be properly pleaded in abatement of the present one, if the complainants in this suit are so far parties to that one as to be bound by any judgment that may be rendered therein. It is important, therefore, to inquire whether they will be so bound. As has been seen, that suit was brought by the complainant on her own behalf, and on behalf of all other property owners and taxpayers of the city of San Diego who are not citizens of California; and, like the present suit, its main purpose was to obtain a decree of this court adjudg-

ing null and void the contract entered into between the city of San Diego and the Southern California Mountain Water Company, and all proceedings thereunder. The grievances complained of by her, on her own behalf and on behalf of all other property owners and taxpayers of the city who are not citizens of California, are identical with the grievances complained of by the complainants in the present suit, and are common to all other property owners and taxpayers of the city similarly situated. The complainant in the Nicholson suit may therefore be justly and properly regarded as representing a class, all of whom will be concluded by whatever judgment may be rendered therein. "The rule is well established that where the parties interested are numerous, and the suit is for an object common to them all, some of the body may maintain a bill on behalf of themselves and of the others, and a bill may also be maintained against a portion of a numerous body of defendants representing a common interest." Story, Eq. Pl. §§ 97, 98; Smith v. Swormstedt, 16 How. 288, 302; Brown v. Trousdale, 138 U. S. 389, 11 Sup. Ct. 308; 1 Freem. Judgm. § 178; 2 Black, Judgm. § 584; Harmon v. Auditor, 123 Ill. 122, 13 N. E. 161; Sabin v. Sherman, 28 Kan. 289; State v. Chester & L. R. Co., 13 S. C. 290. But while the defendants are entitled to plead in abatement of the present suit the one heretofore brought and now pending in this court for the same cause against the same defendants, it is well settled that they cannot plead in abatement of the suit here the suits brought in the superior court of San Diego county by Albert Meyer against the same defendants, and for the same cause. Stanton v. Embrey, 93 U. S. 554; Gordon v. Gilfoil, 99 U. S. 169, 178; Sharon v. Hill, 22 Fed. 28; Pierce v. Feagans, 39 Fed. 587; Rawitzer v. Wyatt, 40 Fed. 609; 1 Beach, Mod. Eq. Prac. § 303.

In addition to the motions already considered, all of the defendants to the present suit move the court to dismiss it, and to discontinue further proceedings therein, upon the ground that the superior court of San Diego county first acquired jurisdiction of the parties and subject-matter of the controversy. If the record showed such to be the fact, this court would not hesitate to grant the motion, or at least to suspend further proceedings in the suit here until the final action of the state court; for I conceive it not only to be settled, but rightly settled, that, where two or more courts have concurrent jurisdiction, the one which first takes cognizance of a cause has the exclusive right to entertain and exercise such jurisdiction, to the final determination of the action and the enforcement of its judgment and decree. Sharon v. Terry, 36 Fed. 337, 354; Sharon v. Sharon, 84 Cal. 424, 430, 23 Pac. 1100; Taylor v. Taintor, 16 Wall. 366; Works, Courts, p. 68; Foley v. Hartley, 72 Fed. 570, 573; Hughes v. Green, 75 Fed. 691; Hatch v. Bancroft-Thompson Co., 67 Fed. 802; Bank v. Herrenden (N. Y. App.) 4 N. E. 332; Freem. Judgm. (4th Ed.) 118a. It needs no argument to show that the rule stated is vital to the harmonious movement of courts of concurrent jurisdiction, exercising their powers within the same spheres and over the same subjects and persons. It is nowhere made to appear, however, that the suit brought by Meyer

against the defendants to the present suit in the superior court of San Diego county was instituted prior to the commencement of the Nicholson suit in this court. It does appear that both of those suits were commenced on the same day, to wit, June 29, 1896, but which one was first commenced nowhere appears. For this reason the court will withhold a ruling upon the motion to dismiss the present suit and to suspend further proceedings therein, with leave to the respective parties to introduce proof in respect to that question of fact.

The affidavit of John G. Capron, sought to be filed by the complainants on the hearing of the present motions, containing, as it does, attacks upon the qualification of the judge of the superior court of San Diego county who tried the consolidated case in that court, will not be allowed to be filed herein. With the qualification or disqualification of the judge of the state court this court has nothing whatever to do. A disqualification of the judge in no respect affects the jurisdiction of the court.

Orders will be entered (1) denying the application of the complainants to file the affidavit of John G. Capron; (2) allowing the defendants hereto to file their pleas setting up the suit heretofore brought by Nicholson against the same defendants for the same cause in abatement of the present suit; (3) denying the application of the defendants hereto for leave to plead in abatement of the present suit the suit brought by Albert Meyer against the same defendants for the same cause in the superior court of San Diego county; and (4) continuing under advisement the motion of the defendants for the dismissal of the present suit and the discontinuance of proceedings herein, with leave to introduce further proof upon the point indicated.