CASE 14—ACTION BY HENDERSON COUNTY AGAINST HENDERSON BRIDGE
COMPANY TO RECOVER TAXES FOR 1893-4-5-6.—JUNE 19.

# Henderson County v. Henderson Bridge Co.

*APPEAL FROM HENDERSON CIRCUIT COURT.*

FROM A JUDGMENT DISMISSING THE ACTION PLAINTIFF APPEALS. RE-
VERSED.

JUDGMENT—ENJOINING COLLECTION OF TAX BY SHERIFF—CONCLUSIVE
AGAINST COUNTY—SUBSEQUENT ACTION BY COUNTY.

Held:   1. Kentucky Statutes (1899), section 4129, makes the sheriff
collector of all taxes, unless otherwise provided. Sections 4148,
4151, 4184, point out the mode of collection by levy on land, &c.
Section 4131 provides that when the office of sheriff is vacant
the county court may appoint a collector of taxes. Constitution,
section 144, provides that each county shall have a fiscal court,
and Kentucky Statutes (1899), section 1834, provides that the
corporate powers of the county shall be exercised by the fiscal
courts. Section 1840 gives the court control of the fiscal affairs
of the county, and provides that it shall have jurisdiction of all
matters relating to the levying of taxes, &c. HELD, that as, under
the statutes, the sheriff of a county, so far as his powers affect
taxation, is merely a tax collector, a default judgment against
him in suit by a taxpayer to enjoin the collection of taxes, in
which the county is not a party, is not binding on the county in
a subsequent action by it to collect the taxes.

MONTGOMERY MERRITT, FOR APPELLANTS.   N. POWELL TAYLOR,
COUNTY ATTORNEY.

1. The right to tax the Henderson Bridge Company upon all
its property, tangible and intangible, and the manner of assessing
same, the right to collect the taxes by suit, and the sufficiency
of the pleadings therefor, most if not all the issues raised by the
pleadings in this case, have been settled by adjudications since
this litigation began, in favor of appellant in Henderson Bridge
Co. v. Negly, 63 S. W. Rep., 989; Louisville Bridge Co. v. City
of Louisville, 65 S. W. Rep., 815; Campbell County v. N. & C.
B. Co., 66 S. W. Rep., 526, except the plea of res adjudicata, and
we now supplement our brief on that point. It is expressly held
in one or two cases a fine could be maintained.

2. The common practice in Kentucky is to make the city or county a party to a suit to enjoin the collection of taxes due them respectively.

Counsel for bridge company under paragraph V of their printed brief say: "It has been the common practice in this State to sue public officers engaged in the collection of taxes, claimed to be illegal for the purpose of enjoining them from making such collection. And such judgments have always been considered as binding on the political body represented by the officer." And they cite four cases to establish that common practice. Two of them practiced by Messrs. Helm & Bruce and one by Russell & Helm. It would be hardly fair to the remainder of the profession to hold them bound by the practice of attorneys in those cases, especially as the question of res adjudicata or defect of parties was not made in said cases, and for the further reason that the State virtually made itself a party by employing Messrs. Helm & Bruce to represent it and paid them, as the Auditor's report shows, for their services.

But let's examine that position taken by counsel, further, to see what foundation there is for it. The common practice in the State has been just the reverse, as shown by the following cases in which both the tax collector and the municipality or county were made parties. Paducah St. Railway Co. v. McCracken Co., &c., 49 S. W. Rep., 178; Royer Wheel Co. v. Taylor Co., &c., 47 S. W. Rep., 876; Eastern Ky. R. R. Co. v. Carter County, &c., 11 R., 677; Ryan v. Central City, &c., 54 S. W. Rep., 2; L. & N. R. R. Co. v. Warren County, 5 Bush, 243; Paducah Gas Light Co. v. McCracken County, &c., 105 Ky., 472; City of Henderson v. Lambert, 14 Bush, 24; City of Lexington v. McQuillan Heirs, 9 Dana, 514; Jackson v. Brown, &c., 66 S. W. Rep., 396; Town of Central Covington v. Park, 56 S. W. Rep., 650.

3. The county or fiscal court was a necessary party defendant to the injunction suits.

The ancient rule of practice as laid down by Daniel's Chancery Pleading and Practice, and which is referred to in 157 U. S. R., 691 L. Co. Ed., was to require all parties in interest, to be made parties to the suit, and if the defect of parties appeared upon the face of the petition, it was ground for demurrer. The Kentucky Code of Practice requiring all suits to be brought in the name of the real party in interest and other parties in interest to be made defendants, is but a reiteration of, and recognition of this ancient rule of practice. (Newman's Pleading and Practice, p. 210.)

The object was to have an end to litigation between all par-

ties interested in the subject matter of litigation, as only parties and privies are bound by the judgment.

This court has more than once said only those are parties who are named as such. Allen Heirs v. Hall's Heirs, 1 Mar., 393; M. & St. P. Co. v. Grey, 9 Bush, 137.

Neither the county nor its fiscal court was a party to any of these suits brought by the bridge company against the sheriff alone, to enjoin the collection by him of the taxes due upon its tangible and intangible property.

The contention of the bridge company is that the sheriff was the legal representative of the county, and therefore the various judgments by default in question, bound the county. The county upon the other hand says that the fiscal court alone was its legal representative.

By the act of 1892 the fiscal court was created (Ky. Stat., p. 687). Section 1834 says: "Unless otherwise provided by law, the corporate powers of the several counties of this State shall be exercised by the fiscal courts thereof respectively." (Section 1839 authorizes the fiscal court to levy taxes, and section 1840 "to regulate and control the fiscal affairs and property of the county."

The sheriff is simply a ministerial officer ex-officio, the collector of taxes, and is not authorized to represent the county in any litigation. It was not the sheriff's duty to litigate the question as to whether the fiscal court had made a levy, nor as to whether the bridge company was subject to taxation upon its tangible or intangible property, nor as to the manner of assessing same. There was no reason for not making the county or the fiscal court a party—the real party in interest.

We do not contend that when a temporary injunction only is sought that the sheriff or tax collector would not be the only party defendant necessary in many cases. But when the merits of the controversy, the subject-matter of the suit is to be litigated so that the final judgment of the court could be pleaded as res adjudicata, then the beneficiary of the tax, when collected—the city or county—must be made a party, unless they virtually make themselves a party by taking charge of the defense as was done in the case of Clark v. Louisville Waterworks, Barbour v. Board of Trade and L. C. & L. R. R. Co. v. Schmidt heretofore mentioned, where the State in the first two cases employed some of the present able counsel representing the Henderson Bridge Company and paid them for their services.

Suppose that the county had been made a party in the case at bar, upon whom would the summons have been served—the sheriff? No. Upon the county judge. Who would have taken

charge ,of the defense for the county—the sheriff?   No;  the
county judge and county attorney.  The sheriff would have had no
voice in the ·defense of the county.  The only interest he would
have had in the litigation was his commission on the amount of
tax enjoined.

How, then, can a judgment against the sheriff alone bind the
county or be pleaded as res adjudicata against the county when
it was not his legal duty to defend the suit?  If the county was
a necessary party, then the judgment against the sheriff alone
did not bind the county and can not be pleaded as res adjudicata
in this case.

## AUTHORITIES CITED.

3. The county or fiscal court was a necessary .party defendant
to the injunction suits.  Ky. Stats, secs. 1834, 1839 and 1840;
10 E. P. & F., 913-4; Vass v. Union School District No. 11, 18
Kan., 467; Hays v. Hill, 17 Kan., 360; Gilmore v. Fox, 10 Kan.,
509; Heinroth v. Kachersperger, 173 Ill., 212; Lefferts v. Board
of Supervision, 21 Wis., 688; 40 Conn., 312; Bradley v. Gilbert,
155 Ill., 154, 39 N. E. Rep., 593; Knoff v. C. R. E. Board, 50, 50
N. E. Rep., 659; Ashton v. City of Rochester, 28 A. S. R., 623;
People v. Clark, 70 N. Y., 578; Knoff v. 1st Nat. Bank of Chi-
cago, 173 Ill., 331, also 212; Sauls v. Freeman, 24 Fla.,. 209, 12
A. S. R., 197; Peck v. State, 137 N. Y., 372, 33 A. S. R., 739;
Harmon v. Auditor, 123 Ill., 5 A. S. R., 502; Gallaher v. City
of Moundsville, 34 W. Va., 26 A. S. R., 946; State v. Chester
R. R. Co., 13 S. C., 280; Foust v. City of Huntington, 113 Ind.,
139, 15 N. E. R., 337; Harns' Parties to Action, secs. 18 and
28; Van Fleet Former Adjudications, secs. 568-9; Beech on
Injunctions, sec. 399; Black on Judgments, sec. 584; Daniel ,
Chancery Pleading and Practice, 4 Am. Ed., 190; L. Co. Ed.,
157 U. S., 691; Roberts v. Davidson, 83 Ky., 282.

4. The State made herself a party by assuming defense and
employing and paying counsel in Barbour, Sheriff, v. Board of
Trade, 82 Ky., 645; Louisville Water Co. v. Hamilton, Sheriff,
81 Ky., 517; Clark, Sheriff, v. Louisville Water Co., 90 Ky., 515.

HELM, BRUCE & HELM, ATTORNEYS FOR APPELLEE.   (YEAMAN &
YEAMAN, OF COUNSEL.)

On the late oral argument of this case the positions taken and
authorities cited by counsel for appellant were so totally dif-
ferent in many respects from those presented by his brief on the
original submission of this case that it practically requires
a re-writing of our brief.

At different times the Henderson Bridge Company brought

several suits against the sheriff of Henderson county to enjoin him from collecting certain alleged county taxes which the was about to proceed to collect. Some of these actions were merely to enjoin the collection of a *part* of the tax claimed against the *tangible property* of the bridge company, the other part having been paid; while others of the actions were to enjoin the collection of any part of the tax claimed by the county against the *franchise* of the bridge company. Final judgments were entered in all of these actions granting the injunction sought.

On June 30, 1898, a suit in equity was filed in the Henderson Circuit Court of the following style: "The Commonwealth of Kentucky, which sues for the use and benefit of the county of Henderson, and her treasurer, S. C. Soaper, and who sue in the name of the Commonwealth of Kentucky, plaintiffs, v. The Henderson Bridge Company, defendant." In this suit "the plaintiffs above named in the caption" alleged that the Henderson Bridge Company had for several years, naming them, been assessed *on its franchise* by the State Board of Valuation and Assessment at various sums, naming them; that payment had been demanded of the county taxes based on these assessments, which payments had been refused; and the plaintiffs further alleged that for several years the county assessor had assessed the *tangible* property at $1,000,000, but that the company had paid the county taxes based on an assessment of its tangible property at only $649,735.54, and had refused to pay any more. Therefore, the plaintiffs prayed judgment for the several amounts of franchise taxes specified in the petition, and for that portion of the alleged taxes on tangible property which they claimed the defendant had not paid. Interest and penalties were also prayed for.

To this petition the Henderson Bridge Company first demurred, insisting that there was no statutory authority to sue for the taxes in question. This demurrer having been overruled, the bridge company then answered, pleading among other defenses *res adjudicata*, based on the judgments heretofore mentioned; and referring to the records in those several actions as parts of the answer.

The circuit court entered a final judgment sustaining the plea of *res adjudicata* and dismissing the petition.

On the original submission in this court counsel for appellant insisted that the appeal was not only from the judgment dismissing the petition in which the county had sued for the taxes, but that an appeal had also been taken by the county from the various judgments in the original actions in which the

perpetual injunctions had been granted against the sheriff. And the brief on the original submission argued those cases on their merits.

But at the oral argument lately had, counsel for the appellant abandoned the claim of an appeal from the original judgments of injunction, and insisted only on the appeal from the judgment dismissing the county's petition in the action in which it sued for taxes.

There are involved in the case, under the position taken by counsel for appellant at the late argument, but two questions, to-wit:

1. Is there any authority for the maintenance of this suit by the county of Henderson for county taxes claimed to be due from the Henderson Bridge Company?

2. Is the plea of *res adjudicata* good?

We will discuss these two questions in their order.

1. No Right to Sue.   There is probably no State in the Union in which the rule has been more rigidly enforced than in Kentucky, to the effect that a suit can not be maintained to recover a judgment for taxes except under express legislative authority.   We ask the court's indulgence while we briefly state the exact status of the decisions of this court on this question.

In Baldwin v. Hewitt, 88 Ky., 673, this doctrine was announced and rigidly enforced.   In that case the State was claiming a large amount of taxes.   This court in effect held that these taxes were due.   But notwithstanding this ruling it further held that there was no authority to sue for them, and therefore the petition had to be dismissed.   On this subject the court said:

"There is no statute in this State, save as to railroad companies, authorizing a suit against the taxpayer for his taxes.

"The exercise of the power of taxation is legislative, and not judicial in character.   Neither the levy nor collection of taxes is an inherent power of the judiciary.   *It has ordinarily no more power to collect them than it has to levy them.   These are not judicial acts.* . . .   Taxes can, therefore, be collected only through legislative authority.   If it does not exist, the remedy is an appeal to the law-making power for additional legislation. . . .

"It is true that although the collection of taxes is a ministerial act, yet the Legislature may empower, and even require, the judiciary to do in a judicial way what ordinarily belongs to the executive branch of the government.   The remedy by suit may be given by statute.   This, however, has not been done. . .

"The Legislature has expressly provided that a railroad corporation may be sued for its taxes.   (General Statutes, sec. 5,

art. 3, chap. 92.) This grant of power was given to avoid the evils which would result to the public from a distraint of the property; and the enactment implies the existence of a legislative opinion that in its absence no such suit could be maintained."

The case just mentioned involved the attempt to collect taxes on the property of an individual. At the time it was decided there was pending in this court under submission the case of the Louisville Water Company v. The Commonwealth, on appeal from a judgment of the Louisville Law and Equity Court, in a case wherein the sheriff of Jefferson county and the Commonwealth of Kentucky had sued the Louisville Water Company, a quasi public corporation, seeking to enforce the collection of a large amount of taxes. We had the honor to represent the Commonwealth in that case. And when the case of Baldwin v. Hewitt was decided we feared the principle of that decision might be applied in our case, though we thought the two cases were distinguishable; and we thereupon prepared and printed an elaborate brief upon the question of the power to collect taxes by suit, and filed the same in this court as a supplemental brief. The question was not raised on the other side in our case, and was not briefed by the counsel for the water company. This court, however, adhered to its decision in the Baldwin case and applied the principle thereof to the water company, and therefore reversed the judgment of the lower court and directed the petition to be dismissed. (Louisville Water Company v. Commonwealth, 89 Ky., 244.)

An examination of the points and authorities of counsel, beginning with paragraph five of the points for appellee, in the official report of this case, and also of the opinion of the court will show how thoroughly the matter was presented by brief and considered by the court. The opinion was devoted solely to this one question of the power to sue.

We called the court's attention to the fact that we did not seek, and had not obtained, a personal judgment, for the taxes against the water company, but that we had sought and obtained only a judgment *in rem*, appointing a receiver for the property of the water company with directions to pay the taxes out of the income of the company. And we called attention further to the fact that the Louisville Water Company was a quasi public corporation; that this court had held in the case of Louisville Water Company v. Hamilton, 81 Ky., 522, that it was such a corporation that it furnished water to the inhabitants of a great city, and that its property, therefore, could not be seized and sold by the sheriff for taxes. This being true, we called atten-

Henderson County v. Henderson Bridge Co.

tion to the fact that unless such a suit as we had brought could be maintained, there was absolutely no means of collecting the taxes which the water company owed. We further called attention to the fact that the statute gave an express lien for the taxes, and that as this lien could not be enforced by sale it was an appropriate case for a court of equity to give a remedy of the character sought, to-wit: By the appointment of a receiver. In our printed brief we stated the question to the court in the following language:

"This then is the case now presented: The Legislature has imposed a moneyed obligation or liability upon the corporation. We care not whether this be called a debt or a duty, it is an obligation or liability to pay money. This court has pointedly called attention to this fact (Greer v. Covington, 83 Ky;, 414), and the statute frequently uses such expression as persons being 'liable' for the tax, or 'bound for' the tax, and of the tax as a 'liability.' (General Statutes, 1883 edition, chap. 92, art. 1, sec. 7; art. 9, secs. 3 and 7, &c.) Then, having created this obligation or liability to pay money, the statute in express terms gives a *lien* on the property of the person liable, to secure the payment of the money thus due. But here it stops (as to the character of property now being considered). It provides no mode of procedure at all for the enforcement of this lien expressly given to secure an obligation expressly created. The question then is, can a court of equity enforce such a lien by proceedings adapted to the nature of the property?" (See our printed brief in that case, page 3.)

Following this statement of the question we made an elaborate discussion of the authorities bearing upon it, showing, as we thought, that a court of equity did have power in such a case to afford a remedy. But in response to this argument and these authorities this court said:

"We are aware that it has been held by some courts and said by some text-writers, that if no specific remedy be given by statute, or only an imperfect or an inadequate one, then it is but reasonable to infer that a remedy by suit was intended by the Legislature. *This court has, however, never assented to such a rule. Public policy, in our opinion, forbids it.*" (Page 251.)

Again, we called the court's attention to the fact that in such cases as Railroad Company v. Trustees of Elizabethtown, 12 Bush, 233, and Louisville Water Company v. Hamilton, 81 Ky., 517, this court itself had expressly said that the taxes of such quasi public corporations as a railroad company or a water company could only be collected under the supervision of a

court of equity; and that we had proceeded on this principle in bringing this suit and in drawing the judgment which was entered. But in response to this argument this court said:

"The cases of Johnson v. City of Louisville, 11 Bush, 527; Railroad Co. v. Trustees of Elizabethtown, 12 Bush, 233, and Louisville Water Co. v. Hamilton, 81 Ky., 517, are not in conflict with the views above expressed. *Expressions of a general character may be found in the argument in the opinions in those cases which seem to support a different view, but the question as now presented was not then before the court, nor was it decided.*

"In the last named case the water company sued out an injunction to prevent the sale of some property for its taxes. It was not sued for them. It voluntarily came into a court of equity, asking relief, and under such circumstances the court said: 'The chancellor having been appealed to by the appellant (the water company) for some sort of relief should have taken cognizance of the case and required the appellant, by rule, to pay the money into court, and if not, to place the management of the corporation in the hands of a receiver, in order that the burden might be discharged.' It is apparent that case is not this one.

"If, where a tax has been imposed and no remedy or any adequate one furnished for its collection by the statute, it were, in our opinion, a correct rule to imply the right to sue for it on account of the silence of the Legislature, yet we would not apply it in view of the fact that our Legislature has expressly provided that a railroad corporation may be sued for its taxes. (General Statutes, chap. 92, art. 3, sec. 5.)

"This was equivalent to a declaration by it that in the absence of such a statute no suit could be maintained. . . .

"Judgment reversed, with directions to dismiss the petition."

2. Res Adjudicata. The defense on which the court below dismissed the petition was that of *res adjudicata.*

There is no question presented here as to whether or not a judgment against the validity of a tax in one year can be pleaded as *res adjudicata* in a suit involving the taxes of a different year. The question in the case at bar is simply as to whether or not a judgment against the validity of a tax in a particular year is a bar to a suit to recover those same taxes for that same year.

The judgments in the injunction cases, enjoining the collection of the taxes claimed to be due to the county of Henderson from the Henderson Bridge Company, are distinctly pleaded in the answer of the bridge company to this suit by the county of Henderson. The reply filed by the county to the answer of the

bridge company does not controvert a single allegation contained in the pleas of *res adjudicata*. Neither does counsel for the county (now appellant) question that the allegations in the pleas of *res adjudicata* are in due and proper form. The sole point made by the county is that in those injunction suits in which the judgments against the taxes were entered, and which are now pleaded as *res adjudicata*, the county was not *eo nomine* a party defendant, but that the sole defendant was the sheriff of the county, who, under the law, was the tax collector of the county, and was endeavoring as such to force payment of the taxes by the power of the law at the time he was enjoined.

It is true the judgments in those injunction cases were default judgments; but counsel for the county does not dispute the proposition that a judgment by default is just as effectual a bar to a subsequent suit as if it had been rendered after the most vigorous contest. And if this proposition was disputed, it is indisputably established by the authoritie. (Last Chance Mining Co. v. Tyler Mining Co., 157 U. S., 683, 691; Harshman v. Knox County, 122 U. S., 318.)

One of the judgments in the injunction suits may be taken as a sample of all the rest as follows, to-wit:

"In this cause (No. 1118) it is adjudged that the injunction granted by the clerk, December 1, 1894, be, and the same is, made perpetual, and it is adjudged that the plaintiff does not owe, and the defendant is perpetually enjoined from collecting the sum of $1,488.52 as a State tax, or $515.39 as a county tax for the year 1894, or any part of either." (Rec. 63.)

Of course the petition in that case shows that the defendant referred to in the judgment is the sheriff of Henderson county, and that he was endeavoring to collect a tax claimed to be due to the State of Kentucky, and a tax claimed to be due to the county of Henderson, for the year 1894, from the Henderson Bridge Company. And the petition in the case at bar shows that the county is now seeking by this suit to collect this identical tax for this identical year from this same Henderson Bridge Company.

If it be true that the county of Henderson is not bound by the judgments in question and can maintain this suit to collect these taxes, then we suppose that it is equally true that the present sheriff of Henderson county, the successor to the sheriff who was enjoined, is not bound by the judgments in question and could to-day levy upon and sell for these taxes any property of the Henderson Bridge Company which he might be able to find which was outside of the bridge itself, and not absolutely

necessary for the performance of the public duty which that company performs. And if this is true, then of course it is further true that the sheriff whom the bridge company sought to enjoin could have prevented a judgment by resigning before the judgment was entered; or could have rendered the judgment completely nugatory by resigning as soon as it was entered and allowing another sheriff or another tax collector to be appointed.

We believe the proposition that these judgments are not binding on the county of Henderson, because simply judgments against the sheriff of the county, when acting in his capacity as tax collector of the county, and because not against the county *eo nomine,* will be surprising certainly to the majority of the lawyers of the State, as it is to us. It may be true, as claimed by the counsel for appellant, that quite frequently suits have been brought against officials of the different cities or counties of the State, in which the municipality itself has been made a party defendant. But it is certainly true that the contrary practice has been very common, and that the principle justifying it has been asserted by this court more than thirty years ago and acted upon frequently. We know of no way of finding all the cases in reports where such practice has been followed, but we can certainly refer the court to a number of them, and in some of which the question of the character of such a suit was expressly considered and decided.

It is said that the sheriff does not in any sense represent the county; that the fiscal court represents the county. This proposition thus generally stated, we utterly deny. Counsel cites section 1834 of the Kentucky Statutes that *"unless otherwise provided by law,* the corporate powers of the several counties of this State shall be exercised by the fiscal courts thereof respectively." But in the matter of the *collection of taxes* it is "otherwise provided by law." The fiscal court has no more to do with the *collection* of county taxes than the sheriff has to do with the *levy* of county taxes. The fiscal court makes contracts for the county, and levies taxes to pay the county's obligations. The assessor then assesses, or places values upon the property in the county. The application of the tax rate fixed by the fiscal court to the assessment as fixed by the assessor shows the amount of taxes due from every property owner to the county. This having been ascertained, the sheriff then collects the tax. The fiscal court does not act for or represent the county in any matter pertaining to the assessment or collection of taxes. The assessor does not act for or represent the county in any matter pertaining to the levy or the collection of

the tax. And the sheriff does not represent the county in any matter pertaining to the levy or the assessment of the tax. Each of these several officers or tribunals acts for and represents the county in the prescribed sphere of his own duties, but not in the sphere of the duties of the other. The result is that if no tax rate had been levied, and if the fiscal court was believed to be about to make a levy for the purpose of paying some obligation which a taxpayer denied, in such a state of case the taxpayer would bring his suit for injunction against the fiscal court to enjoin the making of the levy. On the other hand, if the levy had already been made, but no assessment had been made, he would bring his suit against the assessor to enjoin the assessment of the property. It would be needless to bring a suit against the fiscal court to enjoin the levy because the levy· has already been made; and the fiscal court has nothing to do with the assessment which is the thing to be prevented. So · again, if the levy has been made and the assessment has been made and the collection of the tax is all that is left, the injunction in such a case is brought against the sheriff, as the tax collector, because he is the representative of the county in the matter of collection, which is the one step sought to be enjoined. In such a case it would be idle to make either the assessor or the fiscal court a party to the proceeding. And while we do not say it would be *improper* to make the county *eo nomine* a party defendant, yet we do say it is not necessary, and that the contrary practice has been indulged in in this State certainly for more than thirty years, as it has also been in other States.

It is said the sheriff has no money to pay attorney's fees or stand the cost of litigation. But this point is only skin deep, for if there is any ground of defense, and the county chooses to make defense, the fiscal court can make an appropriation for the expense of the litigation just as well where the sheriff is the nominal party as where the county itself is the nominal party.

Moreover, as to the *likelihood* of defense being made, there is really more likelihood of defense where the shriff is made a party and the summons served on him than where the county is made a party and the summons served on the county judge, because the sheriff has a real substantial personal interest in the contest growing out of the fees or commissions that are allowed him for the collection of the tax, whereas, the county judge, on whom the summons would be served if the suit were brought against the county. has no personal interest in the matter whatever. The result is that suits against sheriffs or other

officers of that kind rarely do go by default; and there is certainly no more likelihood that they will be allowed to go by default than if the county itself were made a party and the summons served on the judge. Of course there is a chance in either case that it may go by default. This is simply one of the chances of litigation.

Furthermore, as heretofore stated, if it could be charged that the default judgment was the result of fraud or collusion it might be attacked on that ground, but there is no such attack in the case at bar.

We respectfully submit that the judgment should be affirmed.

### AUTHORITIES CITED.

1. No right to sue for taxes. Baldwin v. Hewitt, 88 Ky 673., Lou. Water Co. v. Commonwealth, 89 Ky., 244; Lou. Trust Co. v. County of Muhlenberg, 15 Ky. Law Rep., 397; Grand Rapids School Furniture Co. v. Trustees of Pike Co., 19 Ky. Law Rep., 1610; Central R. R. & Bridge Co. v. Com., 106 Ky., 329; Henderson Bridge Co. v. Negley, 23 Ky. Law Rep., 746; Lou. Bridge Co. v. City of Louisville, 23 Ky. Law Rep., 1655; Campbell county v. N. & C. Bridge Co., 23 Ky. Law Rep., 2056; Cov. & Cin. Bridge Co. v. O'Meara, 19 Ky. Law Rep., 1438.

2. Res adjudicata. Last Chance Mining Co. v. Tyler Mining Co., 157 U. S., 683, 691; Harshman v. Knox County, 122 U. S., 318; Maddox v. Graham, 2 Met., 56; City of Louisville v. Kean, 18 B. Mon., 13; State v. Canfield, Fla., 23 Sou. R., 59; Patton v. Stephens, 14 Bush, 324; Rogers v. Jacob, 88 Ky., 502; Mayor, &c., v. Wilson, 103 Ky., 326; Thompson v. United States, 103 U. S., 480; Hicks v. Cleveland, 106 Fed. Rep., 459; Sauls v. Freeman, 24 Fla., 209 (12 Am. St. Rep., 190); Gallaher v. City of Moundsville, 34 W. Va., 730; 26 Am. St. Rep., 946; Ashton v. City of Rochester, 133 N. Y., 187 (28 Am. St. Rep., 619); Lyman v. Farris, 53 Iowa, 498; Ransom v. City of Pierre, 101 F. R., 665; Zimmerman v. Savage, 145 Ind., 144; 44 N. E. Rep., 252; Schmidt v. L., C. & L. R. Co., 99 Ky., 151; Negley, Sheriff, v. Henderson Bridge Co., 21 Ky. Law Rep., 1154.

OPINION OF THE COURT BY JUDGE HOBSON—REVERSING.

The county of Henderson instituted suit against the Henderson Bridge Company to recover certain taxes alleged to be due for the years 1893, 1894, 1895, and 1896. The bridge company resisted judgment on the ground that every item of the taxes sued for had been adjudged illegal in suits

brought by it against the sheriff of Henderson county, final judgment having been entered in each of these suits perpetually enjoining the collection of the taxes. The plaintiff demurred to the plea of res judicata. The court overruled the demurrer, and, the plaintiff declining to plead further, the action was dismissed. The only question to be determined on the appeal is whether the judgments rendered in the former actions by the bridge company against the sheriff bind the county, although it was not a party to those suits. In those cases the bridge company alleged that Henderson county had levied no tax for the years named, that its property had not been assesed for taxation, and that the sheriff had not been authorized to collect the tax. The sheriff did not answer the petition, and judgment by default was entered to the effect that the plaintiff did not owe the tax, perpetually enjoining the sheriff from collecting it. Appellee relies on the principle that a judgment against the legal representatives of a county is conclusive against it and all its citizens. The rule is thus stated in Freeman on Judgments, section 178: "The position of a county or municipal corporation towards its citizens and taxpayers is, upon principle, analogous to that of a trustee towards his *cestui que trust,* when they are numerous, and the management and control of their interests are by the terms of the trust committed to his care. A judgment against a county or its legal representatives in a matter of general interest to all its citizens is binding upon the latter, though they are not parties to the suit." To same effect is Black on Judgments, section 584. The principle stated in these sections is that a judgment against a county or its legal representatives in a matter of general interest to all the people of the county is binding not only on the official representatives of the county,

but on all its citizens, though not made party defendant by name; otherwise there would be no end to litigation. But no question arises in this case between any of the citizens of Henderson county and appellee. The only question is whether the county is bound by default judgments in favor of appellee in actions between it and the sheriff, to which the county was not a party. The question how far a municipality may be bound by a judgment against one of its subordinate officers is not touched upon in either of these sections. In the latter part of section 178 of Freeman on Judgments, it is said: "Though its officer is a nominal party to a suit, and the municipality is not joined with it, a judgment is conclusive for or against it, if it was the real party in interest, and as such prosecuted or defended the action." The rule that one who prosecutes or defends an action in the name of another is bound by the judgment, though not nominally a party to it, is of general application, and has been recognized by this court. Schmidt v. L., C. & L. Railroad Co., 99 Ky., 143, 18 R., 65, 35 S. W., 135, 36 S. W., 168. But this rule does not apply here, as no defense was made to the action against the sheriff. The judgment against the municipality binds its citizens, because it is their legal representative; but can it be said that the county is bound by the default judgment against the sheriff for this reason? A judgment binds only parties and privies. The heir is bound by a judgment against his ancestor; the distributee by a judgment against the administrator; but, unless there is some privity, one person is never bound by a judgment against another. The ground upon which a municipality is held bound by a judgment against certain of its officers is that these are its legal representatives, who are by law authorized to speak for it and control its affairs; but this can not apply to subordin-

ate municipal agencies having no power to speak for the municipality or control its action. In none of the adjudged cases has the municipality been held bound by a default judgment against any of its officers, except those who had charge of its affairs as its chief managing agents. Thus, in Lyman v. Faris, 53 Iowa, 498, 5 N. W., 621, the validity of a tax having been determined in an action against the board of supervisors, who were the managing agents of the county, it was held that an action to enjoin the collection of the tax could not be maintained by a taxpayer, as the supervisors represented all the taxpayers of the county in the defense which they had made to the former action on the same ground. To the same effect are State ex rel. Wilson v. Rainey, 74 Mo., 229; Harmon v. Auditor, 123 Ill., 122, 13 N. E., 161, 5 Am. St. Rep., 502. In Gallaher v. Moundsville, 34 W. Va., 730, 12 S. E., 859, 26 Am. St. Rep., 942, certain taxpayers, suing for themselves and all other taxpayers of the county, sought an injunction against the delivery of certain bonds, which was refused. Then other taxpayers, who were not named as parties in the first suit, brought a similar suit, suing for themselves and all other taxpayer. The first action was held a bar to the second. See, to same effect, McCann v. Louisville (23 R., 558), 63 S. W., 446. Were the rule otherwise in this class of cases, there could be no end to litigation until every taxpayer in the county had brought his individual suit. In Sauls v. Freeman, 24 Fla., 209, 4 South, 525, 12 Am. St. Rep., 190, the county commissioners were sought to be enjoined from moving the county records in a proceeding instituted by certain taxpayers. There had previously been a mandamus awarded against the commissioners to remove the records, and this judgment was held to bar the second suit; but the commisioners were empowered by law to remove the

records and were, therefore, the representatives of the people of the county in this matter. State *ex rel.* Brown v. C. & L. Railroad Company, 13 S. C., 290, rests on the same ground. None of these cases involved a judgment against an inferior ministerial officer who was not by law intrusted with the disposition of the matters in controversy. In no case cited or decided, so far as we can find, has an inferior officer been allowed to accomplish indirectly by means of a judgment against him what he could not do directly. In all the cases where the judgment against the officer was held a bar, his official act without the judgment would have bound the municipality. The question, then, to be determined, is, has the sheriff in the collection of taxes such power, under our statute, as to make him the legal representative of the county so that a judgment against him will bind the county?

By section 4129, Kentucky Statutes, 1899, "the sheriff by virtue of his office shall be collector of all State, county, and district taxes, unless the payment thereof is, by law, specially directed to be made to some other officer." This statute confers upon him only power to collect the taxes. The mode of collection is pointed out in sections 4148, 4151, 4184, Id., by distraint, levy on land, or attachment. By section 4131, if the office of sheriff is vacant, the county court may appoint a collector of taxes. The powers of the sheriff are the same as those of the tax collector. By section 114 of the Constitution each county shall have a fiscal court, composed of the county judge and justices of the peace; or a county may have three commissioners, who, together with the county judge, shall constitute the fiscal court. Pursuant to this provision of the Constitution is section 1834, Kentucky Statutes, 1899: "Unless otherwise provided by law, the cor-

porate powers of the several counties of this State shall
be exercised by the fiscal courts thereof respectively." Also
section 1840: "The fiscal court shall have jurisdiction
. . . to regulate and control the fiscal affairs and prop-
erty of the county, . . . and to execute all of its orders.
consistent with the law and within its jurisdiction, and shall
have jurisdiction of all such other matters relating to the
levying of taxes as is by any special act now conferred on
the county court or court of levy and claims." By section
1883 the officer who may collect the State revenue in each
county shall also collect the county levy. It will thus be
seen that the entire control of the fiscal affairs of the coun-
ty is vested in the fiscal court, of which the sheriff is not
a member, and that his sole power in the matter of taxes
is limited to that of a tax collector. The powers of a tax
collector and the limitations upon his authority are thus
well stated in Cooley on Taxation: "The. authority of a
collector of taxes to collect is his warrant. The duplicate
is but a memorandum of the amount he is to collect from
the parties therein named respectively. Without a war-
rant, the collector becomes a trespasser as soon as he in-
termeddles with the property of the taxpayer." Page 292.
"It is not the business of the collector to question the fair-
ness or propriety of any tax which has been committed to
him for collection. If the assessment is excessive, the par-
ty assessed must make the objection, and not the collector.
His duty is to collect the list committed to him, and he
can not excuse himself for any failure to exhaust his au-
thority in collecting on the pretense that the person taxed
should have been assessed otherwise than he was." Page
500. "In general, any mere ministerial officer to whom
process is issued, which proceeds from an officer, or board,
or other body having authority to issue process of that

nature, which process is legal in form, and contains nothing on its face to notify or apprise him that it is issued without authority, will be protected in serving it, even though in fact it was issued without authority of law. This is a rule not only essential to the protection of such officers, but absolutely required also for the due dispatch of public business." Page 559. The tax collector, therefore, in the collection of his tax warrants, stands substantially as the sheriff in executing a *fi. fa.* or other final process which is delivered to him. In acting under such a writ the officer is protected if the writ is valid on its face. He is not the agent of the plaintiff. The sale made by him is the act of the law, and the plaintiff in the writ is in no way bound by the acts of the officer if he leaves the law to take its course without directing the officer in the discharge of his duties. Freeman on Executions, section 273; Rorer on Judicial Sales, section 46. The sheriff, in the collection of his revenues, is a ministerial officer, charged with a specific duty, which is to collect the money on the tax bills, and pay it over to the person entitled to receive it. He is without power to dispose of the fund, or to release the taxpayer from liability, or to reduce the amount to be paid by him, or to do anything involving the fiscal interests of the county. He has no authority to represent the county in any litigation. He can not employ counsel for it, or subpoena witnesses on its behalf, or do any act at its expense, however necessary, in the litigation for the protection of its rights. In the collection of the public dues, he is simply the agent of the law, performing duties imposed on him by the law. The county is not responsible for his acts out of court unless it directs or controls them; and the same rule must apply to his acts in court, for he can not accomplish by nonaction in court what he could not accomplish by di-

rect action out of court. The law does not impose on the sheriff the burden of defending suits against the county. The expense of such litigation might be far beyond his means. When the rights of the county are to be determined, it should be sued, so that it may control the defense, pay the expenses, and take such steps as its interests may require. There are other officers charged with certain duties ministerial in character in connection with the collection of taxes that must be regarded as the representatives. of the county if the sheriff can be so regarded. Thus it is the duty of the assessor to assess the taxpayers. But it would not be maintained that a default judgment suffered by an assessor enjoining him from assessing the property of a taxpayer would bar the State or the municipality from proceeding under section 4241, Kentucky Statutes, 1899, to have the omitted property assessed. It is the duty of the county clerk to copy the tax list and deliver the copy to the sheriff for him to collect on. · If a taxpayer were to enjoin the county clerk by a default judgment from copying his list and delivering it to the assessor, this judgment would not conclude the Commonwealth or the county, or prevent it from collecting its taxes.

None of the tax cases decided by this court touch the question. It is true, suits to test the validity of taxes have been brought in the name of the sheriff, and, where the litigation has been conducted by the State or municipality in the name of the officer, it is bound by the judgment; but the interests of the municipalities of the State, as well as sound legal principles, require that they should be made parties defendant to actions against the tax collector, where the purpose of the action is to prevent them from collecting their revenues, for the power to tax involves the power to exist, and their usefulness might be crippled or

destroyed if the collection of taxes levied for their sup-
port could be defeated by judgments in actions over which
they had no control. A county may be sued. Section 51
of the Civil Code of Practice provides: "In an action
against a county the summons must be served on the pre-
siding judge of the county court, or, if he be absent from
the county, upon its attorney." In People v. Squire, 110
N. Y., 666, 18 N. E., 362, the plaintiff had obtained a man-
damus against the commissioner of public works, and relied
on that judgment as *res adjudicata* between him and the
city. The court, deeming the matter free of doubt, simply
said: "The city of New York is not a party to the litiga-
tion, and is not bound by any judgment heretofore entered
in this proceeding." In the subsequent case of Peck v.
State, 137 N. Y., 372, 33 N. E., 317, 33 Am. St. Rep., 738, the
court, approving this case, said: "In People v. Squire, 110
N. Y., 666 [18 N. E., 362], we held that a judgment in a
mandamus proceeding against the commissioner of public
works for the city of New York did not bind the city for the
reason that it was not a party to the litigation." In Gil-
more v. Fox, 10 Kan., 509, a suit was brought against the
county clerk and county treasurer to enjoin the collection
of certain assessments made by the city of Emporia, with-
out making it a party. It was held that the city was the
real party in interest, and was a necessary party to the ac-
tion. The court said: "If the city can not collect these spe-
cial assessments, it must resort to general taxation to raise
the amount. But, before it can be properly determined that
the city can not collect these special assessments, the city
must have its day in court." The same principle was fol-
lowed in Voss v. Union School District, 18 Kan., 467, where
a suit to enjoin a collection of taxes was brought against
the treasurer and sheriff. The court said: "Said treasurer

and sheriff were merely nominal parties, and the school district was the real party in interest." To the same effect are Knopf v. Chicago Real Estate Board, 173 Ill., 196, 50 N. E., 658; Heinroth v. Kochersperger, 173 Ill., 205, 50 N. E., 171, and Bradley v. Gilbert, 155 Ill., 154, 39 N. E., 593. In the last case an effort was made to enjoin the action of the county board as to dieting prisoners without making the county of Cook defendant. The court said: "Whatever may be said as to the right or policy of county boards to adopt the method of fixing the amount to be paid for dieting prisoners shown by this bill to have been pursued in Cook county, before that method can be judicially pronounced contrary to law and void, the alleged offender must be given its day in court." See, also, Beach on Injunction, 373; Carpenter v. Grisham, 59 Mo., 251; Samis v. King, 40 Conn., 312; Lefferts v. Board of Supervisors, 21 Wis., 688; 10 Ency. of Pleading and Practice, 913, 914; Attala County v. Niles, 58 Miss., 48.

The other questions made in the case seem to be settled in Henderson Bridge Co. v. Negley, 23 R., 746, 63 S. W., 989; Louisville Bridge Co. v. Louisville, 23 R., 1655, 65 S. W., 815; Campbell County v. Bridge Co., 23 R., 2056, 112 Ky., 659, 66 S. W., 526.

The judgment is reversed, and cause remanded, with directions to sustain the demurrer to so much of the answer as pleads the former adjudication in bar of the action, and for further proceedings consistent herewith.